1877.] PEOPLE ex rel. BURROUGHS et al. *v.* BRINKERHOFF. 259

Statement of case. ·

one parcel, and bid in or taken together, a defect in the title to any one of the lots as before suggested will avoid the sale of all. In such case the sale was of all as an entirety, and as the vendee cannot perform as to all, the sale necessarily falls through. These considerations lead to a modification of the order of the Supreme Court, and the appellant Cossett must be released from his purchase of lots 6, 7, 8 and 9, and must perform the contracts and accept a conveyance, and pay the purchase price of lots 4, 5, 10, 11, 12 and 13, and the appellant Higgins must be released from his purchase of lots 19, 20, 21, 22, 35, 36, 37, 38 and 39, and must perform his contract, and accept a conveyance, and pay the purchase-price of lots 48 and 49.

The order should be modified accordingly, and as modified affirmed, without costs to either party as against the other in this court.

All concur.

Ordered accordingly.

THE PEOPLE ex rel. ROBERT BURROUGHS, et al., Respondents, *v.* JOHN H. BRINKERHOFF, Chairman, etc., et al., Appellants.

The provision of the Revised Statutes (1 R. S., 367, § 5), declaring that a majority of the supervisors of any county shall constitute a quorum for the transaction of business, and that all questions arising shall be determined by a majority of the supervisors present, cannot be altered by a rule of the board.

An act giving to the board of supervisors of one county power to act in a special mode is not necessarily repealed by a subsequent general act giving to all such boards power to act to the same end in another and different mode.

The act of 1872, entitled "An act to amend an act entitled ' an act to extend the powers of boards of supervisors, except in the counties of New York and Kings ' " (chap. 285, Laws of 1872), which gives authority to the board of supervisors of Queens county, upon application of the town officers, to empower the supervisor of a town to borrow money on the credit of the town to lay out, build, widen, macadamize or repair a road, or to purchase a plank-road, is not affected by the provisions of

the act amended thereby (chap. 855, Laws of 1869), requiring a two-thirds vote of the members elected to the board; those provisions only relate to the matters contained in the sections of which they form a part.

Said act of 1872 is not violative of the constitutional provision (art. 3, § 16) prohibiting the passage of a local or private bill containing more than one subject, and requiring that to be expressed in the title.

Said act was not repealed by the provision of the act of 1875 (§ 1, chap. 482, Laws of 1875), giving power to boards of supervisors generally to authorize towns, upon application by vote of a majority of the electors, to purchase plank-roads, etc.

A resolution, presented to the board of supervisors of Queens county, authorizing the town of N. to borrow money to purchase, for public use, a plank-road in the town, received the vote of a majority of the members present; the chairman declared it lost, because it failed to receive a two-thirds vote, and the clerk recorded the ruling. *Held*, that a *mandamus* was properly granted, directed to the chairman and clerk, requiring them to convene the board, and requiring the chairman to declare the resolution carried, and the clerk to so record it, etc.; that, while the writ might have been directed to the board, it was not error that it was not so directed; but, *held*, that as the clerk in making the entry simply acted in the performance of his duty to record correctly what took place, the allowance of costs against him was error.

(Argued January 16, 1877; decided January 23, 1877.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department affirming an order of Special Term directing the issuing of a writ of peremptory *mandamus*, directed to defendant Brinkerhoff, as chairman of the board of supervisors of Queens county, and to defendant Potter, as clerk of said board. (Reported below, 7 Hun, 668.)

The requirements of the writ and the facts are set forth sufficiently in the opinion.

*John J. Armstrong* for the appellants. There was no legal authority for the board of supervisors to grant the permission to raise money for the purposes desired. (*People ex rel. Fowler* v. *Bull*, 46 N. Y., 57; *People* v. *Hills*, 35 id., 449; *People* v. *O'Brien*, 38 id., 193; *People* v. *Suprs.*, 43 id., 10; *People ex rel. City of Rochester* v. *Briggs*, 50 N. Y., 553; 8 id., 282; 42 id., 186; 60 id., 398; *Town of Fishkill* v. *F. and B. R. R. Co.*, 22 Barb., 634; *People* v. *Comrs. of Palatine*, 53 id., 70; *People* v. *Allen*, 42 N. Y., 404.)

*L. Bradford Prince* for the respondents. Chapter 285, Laws of 1872, is constitutional. (*Conner* v. *Mayor, etc.*, 5 N. Y., 285; *Phillips* v. *Mayor, etc.*, 1 Hilt., 483; *People* v. *McCann*, 16 N. Y., 58; *Burnham* v. *Acton*, 35 How. Pr., 50.)

FOLGER, J. By an act passed in 1869 (Laws of 1869, chap. 855, p. 2056), legislative authority was given to the board of supervisors of any county in the State, except New York and Kings, to empower the supervisor of any town, with the consent of certain other town officers, to borrow money on the credit of his town to build or repair any road or bridge (§ 1); and to provide for the use, as highways, of abandoned turnpike, plank or macadamized roads, within the town; and for the improvement of any public highway laid out in pursuance of law (§ 2); but jurisdiction in the cases named in section 2 was not to be exercised without the assent of two-thirds of all the members elected to the board. (*People ex rel. Atkinson* v. *Tompkins*, 64 N. Y., 53.)

In 1872, the act of 1869 was amended by adding to it another section as section 9, whereby legislative authority was given to the board of supervisors of Queens county, at any meeting of which notice should have been given according to the section, and on the written application of the supervisor and other town officers, or a majority of them, to empower the supervisor of a town, to borrow such sum of money on the credit of the town, as should be deemed necessary to lay out, build, widen, grade, macadamize or repair any road or roads, or to purchase for public use any plank-road.

All of the town officers of the town of Newtown, in the county of Queens, in pursuance of the last-named act, applied to the board of supervisors of that county for authority to borrow, not to exceed $60,000, on the credit of their town, to purchase for public use the Newtown and Jamaica plank-road, within the limits of their town, and to improve the same, by grading it to its full width, so as to have a sidewalk on either side ten feet wide, and by macadamizing it eighteen feet wide in the center, to the depth throughout of eighteen inches.

Notice of a meeting of the board to consider the application was duly given, and, in pursuance thereof, the board met. A resolution was offered at the meeting for the granting of the authority asked for, and specifying the form and contents of the bonds which should be issued for, and of, the town. The resolution was put to a vote, whereupon four supervisors voted in the affirmative, and three in the negative. The chairman, who is an appellant in this proceeding, thereupon declared that the resolution was lost, and the clerk, who is an appellant in this proceeding, recorded in the minutes that the chairman had so decided. The ground of the decision was, and was stated on the records, by the clerk, to be, that it required a two-thirds vote to adopt the resolution; and there was cited for such requirement the act of 1869, above mentioned herein, and a rule of that board of supervisors. An appeal was taken from the decision of the chair, and his ruling was sustained by a vote of a majority of the members voting. No further action was taken by the board upon the application.

Upon an affidavit made in behalf of the town, and upon an answering affidavit by the chairman and clerk, defendants, a *mandamus* was moved for at Special Term, and granted, that the chairman and clerk cause the board of supervisors to convene, and that the chairman declare the resolution carried, and the clerk so record it, and that the supervisors then act upon the petition, and that the chairman and clerk do such other acts as might be necessary to give the action of the board legal effect. The order of the Special Term was appealed from, and was affirmed by the General Term, and is now brought here for review.

The appellants are in error, in supposing that it required a two-thirds concurring vote of all the members elected to the board to adopt the resolution.

The Revised Statutes declare that a majority of the supervisors of any county shall constitute a quorum for the transaction of business; and all questions which shall arise at their meetings shall be determined by the voice of a majority of the supervisors present. (1 R. S., 367, § 5.) No rule of the

board could alter this. It could be changed by law only. No law is suggested as having wrought a change, save the act of 1869 (*supra*). Quite plainly, the action of this board under the act of 1872, was not affected by the provisions of any prior section of the act of 1869. Those of section 2 of that act, take in only the matter of that section; (*The People* v. *Tompkins, supra.*) Those of sections 3 and 5, take in only the matters of each of them respectively. We assume that the seven supervisors who were present at the meeting, were a majority of all the supervisors of the county; hence a concurring vote of four, was the voice of a majority of a quorum, and by that vote the resolution was legally adopted. It is said, however, that the request in the application of the town officers to the board of supervisors, was to improve the plank-road after it was bought, and that the power to authorize a town to improve a road is found only in the second section of the act of 1869, and that hence a two-thirds vote was required. If the application had done no more than to ask power to purchase and power generally to improve, this might have been so. But it asks to improve after a certain fashion particularly named, to wit, to grade the road to its full width, in such manner as to leave a sidewalk on either side ten feet wide, and to macadamize eighteen feet wide in the center, and to the depth of eighteen inches. Doubtless the carrying out of these particulars would be to improve the road, inasmuch as every making a road better and more passable is an improvement; but it is an improvement by means and as a result. The means sought to be used are included in the terms of the act of 1872, viz., to widen, to grade, to macadamize and repair. Power for each of these operations is asked (but no other like power); to widen by grading to full width, to grade, to macadamize, and to repair, and to do this in such mode as to facilitate the passage of the people on foot as well as the people in vehicles. Besides, the application is in terms based upon the act of 1872, and if the town officers asked aught which that act did not authorize, the chairman and the board should have put their action upon

that ground, and not on a requirement of the act of 1869 not touching the subject.

The learned counsel for the appellants states the rule correctly, by which it is to be determined whether a prior statute is repealed by a later one. If there be express words of repeal, that is, words which name by title or number of chapter and year of passage, or other clear indication, the prior act and repeal it, there is, of course, no difficulty in apprehending that fact. It is not so easy to say, when a prior statute is repealed by a later one, by implication. The clause which is common in statutes, and which repeals all prior statutes inconsistent with it, is but little aid to a determination of what is repealed. Still, must it be ascertained that an inconsistency exists, so great that by no reasonable construction can the earlier and the later acts stand together. We do not think that this can be said of the amendment to the act of 1869, made in 1872, and the later act of 1875, (chap. 482, p. 556, § 7). It must first appear that the powers conferred upon all boards of supervisors, and upon that of Queens county as well as others, are so repugnant to the powers conferred by the act of 1872 upon that of Queens county alone, as that they cannot consist or co-exist. The giving to the board of supervisors of one county, power to reach an end in a certain mode or upon a certain application, is not repugnant to the giving power to all boards to reach the same end in another manner and upon a different application. The statutes are full of powers and directions in general, and almost as full of exceptions from them in favor of localities. Nor is it different when the power has been just given to a particular locality to act in a special mode, if after that, power is given in general to all boards, to act to the same end in another mode. The gift of general power does not necessarily abolish the gift of particular power, and there must be found something in the language of the enactment exclusive in its purport, shutting out all other modes of action and confining to that designated in the act, before we can say that the legislature meant to debar any locality from the exercise of the power in

the special mode before lawful, (See *Excelsior Pet. Co.* v. *Lacey*, 63 N. Y., 422 and cases cited, pp. 426, 427.) There is nothing of this sort in the act of 1875. It provides a way in which all boards of supervisors may authorize a town to acquire a plank-road. The board in Queens county may proceed in that way. It is not shut up to that way, but may use the method of the act of 1872. The two enactments are not repugnant, and will not be, until a law for the whole State, expressed in no terms of exclusion, shall be held to be repugnant to every law on a similar subject-matter passed in behalf of a portion of the State.

The act of 1872 is not unconstitutional. It is claimed that it is a local act, and that the subject of it is not expressed in the title of it. It may be conceded that it is a local act. And it is to be said, as a general rule, that whenever such an act and the title meet the purpose of the constitutional inhibition, the act is valid. That purpose has often been stated. It is two-fold. To prevent "log-rolling." This is done by forbidding more than one subject. This act is not obnoxious to that. To advise the public in general, and members of the legislature in particular, by the title of the bill, what interests are likely to be affected by its becoming a law. The title of this act is "An act to amend an act entitled 'An act to extend the powers of boards of supervisors except in the counties of New York and Kings,' passed May 11th, 1869." This certainly advises every one interested in the doings of a board of supervisors, that the powers of that board may be increased or diminished. A citizen of the county of Queens, at home, or the representative of the county of Queens, in the legislature, had reason from this title to apprehend that the powers of the board of supervisors of that county might be involved. So it was not obnoxious to the constitutional inhibition in that respect.

It is urged that the *mandamus* should have been sent to the whole of the board of supervisors instead of the chairman and clerk. And it might well have run to the board, and have ordered them to correct their minutes, and gone on to afford

to the town the relief asked for, or otherwise to dispose of the matter according to law. But it is not error that it did not. The chairman, in his office of chairman, acted illegally. He was the member of the board mainly so acting. He was persistently so. He refused to correct his error, and to announce the resolution to have been adopted. The *mandamus*, to him, when obeyed, will effect the whole purpose sought by the application to the court. For it will, by a correction of the erroneous ruling of the chairman, and a rectification of the minutes of the board, leave the vote of the board upon the resolution to have its due effect. The main thing then, is to have the erroneous ruling of the chairman withdrawn, and the minutes of the board freed from its effect, which was a rejection instead of an adoption of the resolution. But, as this cannot be done, without a meeting of the board, the command of the writ is proper for a meeting to be called of all the supervisors, so that in orderly way the erroneous action of the chairman may be retraced, and the board be in a position to act upon the resolution as one already adopted. The board is authorized to meet annually, and also to hold special meetings at such times and places as they may find convenient; (1 R. S., p. 305, § 1.) So that a special meeting is lawful, and the mode of convening the board pointed out by the writ seems proper enough.

It is suggested that so much time has elapsed since the action of the board, which is now sought to be corrected, that some of the provisions of the resolution will be found impracticable, or, at least, inconvenient. To this it may be replied that such result is not good ground for now resisting the operation of the writ. That speaks and acts as of the very time when the illegal action took place. It seeks to correct that action as of that time. When that action is corrected, and the resolution again in the possession of the board, we see no reason why it may not do with it, whatever could have been done with it on the day of the passage of it, or any day subsequent, in accordance with law, and the valid rules of proceeding governing the action of the board. It may reconsider

and amend, and for aught we now perceive, reconsider and reject.

We cannot forbear noticing another thing, though no mention is made of it in the case or upon the points. The clerk of the board is made a party defendant in this matter. His duties were purely ministerial, simply to record correctly, what took place at the session of the board, in the order in which it took place. He had no power to alter or affect the action of the board either way, had he been ever so much convinced that it was wrong or was right, and had he ever so much desired to. Nor does it appear that he did affect or attempt to affect it. He only put down in the minutes, a correct recital of the doings of the board with this resolution. It was his duty by law to do so. He was bound to record in a book, to be provided for the purpose, all the proceedings of the board; (1 R. S., p. 367, § 9.) We do not perceive wherein he has been in fault, and made himself liable to judicial animadversion, or subjected himself to costs. That part of the order which makes him jointly liable with the chairman for the costs of this proceeding seems to us erroneous, and should be reversed, and he should have his costs of defending.

With this modification the order should be affirmed.

All concur.

Ordered accordingly.