THE TERRITORY OF OKLAHOMA, on the relation of W. R. TAYLOR, County Attorney of Oklahoma County, Territory of Oklahoma, v. SCHOOL DISTRICT NO. 83, OF OKLAHOMA COUNTY, TERRITORY OF OKLAHOMA, and SAMUEL THORNBURGH, E. S. EYER AND A. S. REED, individually, and as District Board of said School District No. 83.

(Filed Feb. 8, 1901.)

1. LEGISLATION—Local—Defined. The word "local," as a word of constitutional or statutory prohibition, signifies belonging or confined to a particular place, and relates only to a portion of the people of a state or their property. When applied to legislation it signifies such legislation as relates to only a portion of the territory or state, or a part of its people, or to a fraction of the property of its citizens.

2. LEGISLATION—Special—Defined. The word "special," when used in a statute prohibiting special legisltion, relates to and distinguishes one section from others of a general class.

3. SCHOOL DISTRICTS—Act Creating—Validity. A legislative act which undertakes to appropriate portions of two school districts, lying in separate counties of the Territory, and to include the area thus designated in a single school district, by an act of the statute, apart from and which interfers with the general act of the Territory providing a general system of schools for the Territory, under which a general rule is adopted for the organization of all school districts in the Territory, is a "special" act of legislation.

4. SAME. An Act of the leg'slature declaring that certain sections of land taken from Oklahoma county, together with certain sections of land taken from Logan county, shall together constitute one school district at the town of Waterloo, is "local" and "special" legislation, and inasmuch as a general school system has been adopted for the Territory, making a general provision for the creation of school districts by the county superintendents of the various counties, with the right of appeal on behalf of the parties residing in the several districts thereof, to the board of county commissioners and providing for the taxation of property for the benefit of the schools of the several districts, is an interference with the "management of the common schools," and is prohibited

by the act of congress approved July 30, 1886, entitled "An Act to Prohibit the Passage of Local or Special Laws in the Territories of the United States."

5. SAME. An Act of the legislature creating a "school district at the station of Waterloo, Oklahoma," and that "the first election shall be held at Waterloo," is prohibited by the said act of congress.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before Jno. H. Burford, District Judge.*

*W. R. Taylor, County Attorney, J. S. Jenkins* and *J. L. Brown,* for the plaintiff in error.

*Lawrence & Huston,* for the defendants in error.

### STATEMENT OF THE CASE.

This was an action brought in the district court of Oklahoma county, to set aside the "pretended" incorporation of the defendant school district, and to declare that incorporation null and void, as being in violation of the act of congress of July 30, 1886, "to prohibit the passage of local and special laws in the territories of the United States," etc.

The petition averred the incorporation for the previous period of four years in Oklahoma county of school district No. 5; that it had a school district and school house, was carrying on a school under the general school act applicable to the whole territory, entitled "An Act for the Support and Regulation of Common Schools," which took effect March 14, 1893; that the district board of the school district No. 5 was Ells, as director, Griner, treasurer, and Hardy, as clerk, and that it was duly organized, and that they were acting and performing their duties in all re-

spects as provided by law; and that the school board had levied taxes to support the school, and that the taxes had been certified to the county clerk of Oklahoma county, and duly levied as provided by law on the lands and personal property in the district; that the predecessors of said board had been so regularly performing their functions under the general school law during the previous four years; that the Sixth legislative assembly of the Territory of Oklahoma, on the 10th day of March, 1899, enacted a law, which was approved by the governor, and is found on page 226 of the Session Laws of 1899, to the effect that a number of sections of land included within the said district No. 5 should be "created into a school district at the station of Waterloo, in Oklahoma county, Oklahoma Territory," describing it by metes and bounds.

That: "Section 3. The county superintendent of Oklahoma county shall number the district hereby created," and that: "Section 4. School officers shall be elected and taxes levied in the district hereby created, as in other districts. The first election shall be held at Waterloo."

The petition further averred that, under the provisions of this act of the legislature, the legal voters residing on the land described in said legislative act, met at Waterloo at the time provided by law for holding school elections, and elected the defendants, Thornburgh, director, Eyer, clerk, and Reed, treasurer; and that they qualified and entered upon the discharge of the duties of such offices, and the county superintendent of Oklahoma county numbered the school district No. 83, of Oklahoma county; and that, since that time, the "school district No. 83" has been acting as a corporation, under the school laws of Oklahoma, and that the electors residing in the territory specified, voted, and certified taxes upon the property

in the so-called "school district No. 83," which have now, under the law, been extended and levied upon all the lands and personal property of the persons who are located upon the lands sought to be taken from district number 5 by the act of the legislative assembly, and so sought to be given to "district No. 83." And the proceedings of the district board of district No. 5 are thus interfered with by the levying of taxes upon the taxpayers of that part of the said district; that a large portion of its taxable property is thus taken away, and that the effect of this legislation, if not remedied by the court, will be to exclude the officers of school district No. 5 from the discharge of their legal duties as such officers, to lessen the amount of taxes capable of appropriation to the support of the school of that district, and would result in lessening the number of months in the year during which a school can be sustained and supported in school district No. 5. And that the said act of the legislative assembly is null and void, as being in violation of the act of congress of July 30, 1886, (Supplement to the Rev. Statutes of the U. S., p. 503,) which provides, "That the legislatures of the territories of the United States now or hereafter to be organized shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * providing for the management of common schools and * * * the opening and conducting of any election or designating the place of voting."

And that the said school district is attempting to exercise the functions of a corporation, unlawfully, and all the acts of its board of directors are null and void, and that the county superintendent of schools in Oklahoma county

never attempted to, or created said school district, except to number it as in the said legislative act provided, after it was attempted to be organized.

The relief sought was that the officers of district "No. 83" should be ousted from the functions of school officers of such corporation, and from all interference with the officers of school district No. 5, and from receiving any taxes collected therefrom.

Subsequently the school board of district No. 5 intervened in the cause, affirming the facts set forth in the petition joined in the prayer for relief. The defendant "school district No. 83" demurred to the petition, as not stating facts sufficient to constitute a cause of action. The demurrer was sustained, and upon this order of the court, error has been assigned and the case brought here.

Opinion of the court by

McATEE, J.: Since the acts of the territorial legislature are subject to such revision and restraint as may be imposed by congress, the preliminary question which arises here is whether the territorial legislation complained of is, in fact, "local" or "special" in the sense comprehended in the federal statute.

It was said in Dwarris on the Statutes, 384, that:

"Statutes whose operation is intended to be restricted within certain limits, are 'local' statutes in the sense of the constitutional prohibition."

The definition given to the word, as a word of constitutional prohibition, by Burrill in his Law Dictionary (vol. 2, p. 153,) is "relating to place; expressive of place; belonging or confined to a particular place."

It is said In re DeVauceane, 31 How. Pr. (N. Y.) 289, that a law which in its practical operation is applied to a limited district, is local.

It was said in *Clark v. Janesville*, 10 Wis. 136-179, that:

"An act is local, within the meaning of the constitution, which in its subject relates but to a portion of the people of the state or their property; and may not, either in its subject, operation or immediate and necessary results, effect the people of the state, or their property in general."

It was said in *The People v. Allen*, 42 N. Y. 378, that the fact that an improvement was to be made and money expended in a very limited locality must obviously determine its local character.

In the *People v. O' Brien*, 38 N. Y. 193, the court said that a local act was one "confined in its operation to the property and persons of a specified locality."

In 1869 an act was passed to "extend the power of supervisors except in the counties of New York and Kings." It has never been supposed that this was a local act, because the two counties were excepted from its operation. But in 1872 an act was passed, amending the act of 1869, by adding thereto additional sections relating entirely to Queens county. These acts came under consideration in *The People v. Brinkerhoff*, 68 N. Y. 259, and with reference to the latter act, the court said that "it may be conceded that it is a local act."

And in 43 N. Y. p. 10, the court, Folger, J., defined the meaning of a local bill, as follows:

"The word 'local,' as applied to a bill, act or law, means such bill, act or law, as touches but a portion of the territory of the state or part of its people, a fraction of the property of its citizens."

We may regard these authorities as a sufficient indication of the meaning of the word "local" as here used in the prohibition of the federal statute, and that when the legislature of the Territory, by the act in question under-

—36

took to define by metes and bounds, and to "create a school district at the station of Waterloo, in Oklahoma county," it was, within the meaning of the federal prohibition, a "local" law.

We think it also subject to prohibition as a "special" law.

It was held in *Morrison v. Bachect*, 112 Pa. St. 322, that an act of the legislature of that state which excluded perpetually from its operation counties containing more than a designated and less than another designated number of inhabitants, was a violation of that provision of the constitution which prohibited "special" legislation relating to affairs of counties.

In the state of Pennsylvania an act for the incorporation of street railway companies in cities of the second and third classes was held unconstitutional, as being special legislation, for the reason that it selected such companies as may be located in cities of the second and third class, and made special provisions for them, while all the other street railway companies remained under the operation of the general law, and that this was just what the constitution of Pennsylvania declared should not be done, (*Weinman v. Passenger R. Co.*, 11 Cent. Rep. 54.)

In the *State of Ohio v. City of Cincinnati*, 20 O. St. p. 18, the constitution of Ohio provided, that "the general assembly shall pass no special act conferring corporate powers," and that "the general assembly shall provide for the organization of cities and incorporated villages by general laws." Thereafter, the legislature of that state undertook to "prescribe the corporate limits of Cincinnati," and the supreme court of Ohio held it to be a "special" act, and that the effect of it, if the act should be

sustained by the court, would be to confer upon the corporation of that state additional powers; to confer, on certain conditions, the power of municipal government, the power of police regulation, the power of judicial jurisdiction, and of taxation and assessment, over a number of outlying incorporated suburban villages, and through territory not before within the limits of the city, and that the legislatuve statute was therefore, repugnant to the consitutional prohibition against special legislation, and was of no binding force and validity.

It was again held in the *State ex rel. v. Mitchell,* 31 O. St. 592, the supreme court of Ohio interpreting the same constitutional provision, that the general assembly shall pass no special act conferring corporate powers, that "An act of the legislature to provide for the improvement of streets and avenues in certain cities of the second class," was, inasmuch as it was made applicable to cities of the second class having a population of over thirty-one thousand at the last federal census, and that inasmuch as Columbus was the only city in the state having the population named at the last federal census, and the act therefore applied alone to that city, and if that act applied to any other, that the fact that the act was exactly the same as if the city had been designated by name, instead of by the circumlocution which had been employed, and that it was therefore a special act conferring power upon the city of Columbus, and was in conflict with that provision of the constitution that the general assembly shall pass no special act conferring corporate powers.

If the legislative act now here to be considered should be held to be effective by this court, it would be to confirm in the legislature an authority to create a separate

school district, with an independent and separate control from that of school districts, parts of whose territory has been taken and appropriated by the legislature to constitute the new "school district No. 83," and from the other school districts of the Territory which are organized under the general school law of the Territory. And we think, therefore, it is manifest that the act of the territorial legislature was not only "local" but "special" also.

While, therefore, we must now hold that the legislation of the act of the legislature of 1899 in question was both "local" and "special" in character, it is yet not prohibited by the act of congress of July 30, 1886, unless the thing proposed to be done by the act was included within one of the "enumerated cases," that is, that the legislature undertook, by this "local" and "special" act, to provide for the management of common schools," or "for the opening and conducting of any election or designating the place of voting."

Among the material averments of the petition upon which the determination is here to be made, are that the complaining school district has been and will be, if the act of the territorial legislature continues in force. deprived of a large part of its taxable property, both real and personal; that it has been and will be deprived of a large part of its revenues; that it will be unable to support its school as formerly, but it will be compelled to close it during a number of months in the year during which it was formerly held open; that its school board will be ousted of their jurisdiction and authority under the general statutes of the Territory which provide in ch. 73 of the Statutes of 1893 "for the support and regulation of common schools," and that while this general

statute for the regulation of the common school system of the territory, makes it "the duty of the county superintendent of public instruction to divide the county into a convenient number of school districts, and to change such districts when the interests of the inhabitants thereof require it, * * * *Provided*, that any person interested may appeal to the board of county commissioners from the action of the county superintendent." (Sec. 12, art. 1, ch. 73, Statutes of 1893.)

And that: "If in the formation or alteration of, or refusal to form or alter school districts, any person or persons shall feel aggrieved, such person or persons may appeal to the board of county commissioners, who shall confer with the county superintendent, and their action shall be final." (Sec. 4, art. 2, ch. 73, Statutes of 1893.)

And that a part of the new "school district 83" has been made up, if effective by this act of the territorial legislature, of portions of territory from Oklahoma county and a portion of territory from Logan county, and is especially placed under the management of the school superintendent of Oklahoma county. We think it manifest that the legislation complained of is a violation of the inhibition against local and special legislation "providing for the management of common schools."

The management of the school which is included under the jurisdiction of school district No. 5 has been interfered with. A district has been created by the legislature in violation of the specific provisions of the general act providing "for the support and regulation of the common schools," which provides that it is "the duty of the county superintendent of public instruction to divide the county into a convenient number of school districts and to change

such districts when the interests of the inhabitants thereof require it," and it gives to the residents of the district who are interested, the right of appeal to the board of county commissioners. The general jurisdiction of the county superintendents of both Logan and Oklahoma counties have thus been interfered with.

The legislature has assumed in this particular instance to do the thing which is, by the statute, made the duty of the county superintendent to do, and it has carved out a district from portions of each of the two counties mentioned, interfering with the management of the complaining school district, to the lessening of the assessable property upon which the school district and the maintenance of its school are dependent for support, and cut down the support of the school by several months in each year, by an act of the legislature, which precludes all those who may think themselves aggrieved, that statutory right and privilege which is provided for their relief in the statute, that "if in the formation or alteration of or refusal to form or alter school districts, any person or persons shall feel aggrieved, such person or persons may appeal to the board of county commissioners, who shall confer with the county superintendent, and their action shall be final."

We think this legislation contravenes the federal statute, prohibiting "local" or "special" laws in the territories, "providing for the management of common schools."

The opinion of the court in the *State v. Powers*, 38 O. St. p. 54, furnishes a guide upon the subject.

In that case the defendants having assumed to act as the board of education of the New London school district,

New London township, Huron county, they were called upon in the proceeding to show by what title or warrant they assumed to do so, and answered by showing an election under the act of the general assembly of Ohio of March 31, 1879, entitled "an act to consolidate the territory comprising the township of New London, in Huron county, into a special school district. The provisions of the statute were: that upon a vote provided for, "the territory comprising the township of New London, consisting of the New London township school district, and the New London village school district, be and the same is hereby organized into a special school district, to be known as the New London school district."

It was contended that the statute in question was in conflict with a provision of the Ohio constitution, that: "All laws of a general nature shall have a uniform operation throughout the state."

It was held by the court that if the subject matter be of a general nature, all laws in relation thereto must have a uniform operation throught the state, and if the subject matter be of a local nature, the legislature may provide accordingly, by laws either local or general in form.

And the court said that: "If the constitution declares a given subject for legislation to be one of a general nature, that all laws in relation thereto must have a uniform operation throughout the state, and courts should not hesitate to declare special and local enactments on such subjects to be unconstitutional and void"; and that the constitution of the state having provided that the general assembly should make such provisions as would "secure a thorough and efficient system of common schools throughout the state," a majority of the court were of the

opinion that the subject of common schools was thus declared to be of a general nature; that "the interest of every section and every individual is to be secured by a thorough and efficient system of schools, and, as if it were to guard against such special and local legislation as we find in this statute, is expressly declared that such system shall extend 'throughout the state'."

And the supreme court added that:

"No amount of logic could make plainer the proposition, that the common schools of the state, as a subject for legislation, is one of a 'public nature,' and that all laws in relation to the organization and management thereof must have a uniform operation throughout the state."

And it added with great force, that:

"It does not require a prophetic eye to see, that local legislation to suit the views of this locality and of that would soon impair the efficiency of our public schools— that while in some places they might be elevated, in others they would be degraded. True, in some localities, from density of population and other causes, different necessities may exist requiring modifications in the management of schools in order to attain the greatest efficiency. But for all such cases, ample provision can be made by judicious classification and discrimination in general laws."

The legislation treated of in the Ohio case was, for all the purposes of this argument, precisely similar to the legislation complained of here. It undertook to create a separate school district by uniting "New London township school district, and the New London village school district," and that the same should be organized into a special school district. The supreme court of Ohio here expressly held that this legislation was "a law in relation to the organization and management" of the

common schools, which is contested at this point. And, indeed, we do not see how it can be argued with any force of reason that the legislature may, by such acts as these, intrude into the general system of school management by attempting to take hold of some area in a particular locality already included within other school districts, and create out of that area a special school district, and take away taxable property, revenue, scholars and general support from a particular school district, without not only interfering with its management, but without conceding to the territorial legislature the power to destroy the particular district itself, and if carried far enough, to destroy the general school system itself.

In addition to the consideration here mentioned, when the legislature undertook to provide, that after creating "a school district at the station of Waterloo, in Oklahoma county," that "the first election shall be held at Waterloo," it was in direct contravention of the inhibition of the federal statute against a local or special law in the territories for the "opening and conducting of any election, or designating the place of voting."

The judgment of the district court should be reversed, and the cause remanded, with directions to reverse its ruling, and overrule the demurrer to the petition, and for further proceedings.

Burford, C. J., who presided in the court below, not sitting; Burwell, J., withholding any expression of opinion at this time, but reserving the right to either concur or dissent upon further investigation; all of the other Justices concurring.