In the Matter of HELENE SMIDT, Appellant, against JOSEPH V. MCKEE, as Acting Mayor of the City of New York, et al., Respondents.

(Argued May 22, 1933; decided July 11, 1933.)

*Leslie D. Dawson* and *E. DeT. Bechtel* for appellant.

*Arthur J. W. Hilly, Corporation Counsel* (*Vine H. Smith* and *J. Joseph Lilly* of counsel), for respondents.

LEHMAN, J.   Prior to May, 1931, Lexington avenue from a point 100 feet south of Forty-first street to a point 100 feet north of Thirty-eighth street was included in a residence district upon the " Use District Map " which had been adopted in accordance with the provisions of the Greater New York Charter (Laws of 1901, ch. 466) and constituted part of the Building Zone Resolutions of the city.   On May 22d, 1931, a motion was presented at a meeting of the Board of Estimate and Apportionment to change the map so as to bring this part of Lexington avenue within the boundaries of a retail district.   The minutes of the meeting show that fifteen votes were cast in favor of the motion and one vote was cast against it, and the motion was then declared adopted.

An abstract of the minutes was published in the *City Record*. On the face of the records it thus appears that the property affected may now be used for retail business.

Prior to the vote taken at the meeting of May 22d, 1931, all the requirements of the Charter and the Building Zone Resolutions of the city of New York, preliminary to action upon a resolution for the amendment of use district or resolution, had been, complied with. The petitioner and other owners of property immediately in the rear of the Lexington avenue frontage had filed protests. The Board of Estimate and Apportionment could pass the resolution, in spite of such protests; but if protests were presented " by the owners of twenty per centum or more of the frontage proposed to be altered, or by the owners of twenty per centum of the frontage immediately in the rear thereof, or by the owners of twenty per centum of the frontage directly opposite the frontage proposed to be altered,' such amendment shall not be passed except by a unanimous vote of the board." (Greater New York Charter, § 242-b, amd. L. 1924, ch. 295.)

The petitioner, claiming that the owners of more than " twenty per centum of the frontage immediately in the rear " of the frontage proposed to be altered had presented protests and that, therefore, the amendment could not be passed except by unanimous vote, has asked for a peremptory order of mandamus to compel the correction of the minutes of the meeting so as to show that the amendment was not adopted. No issue of fact is raised to the allegations of the petition. There is, apparently, no dispute in regard to the number of protests which were presented. The only dispute is as to the meaning of the words " frontage immediately in the rear " of the frontage proposed to be altered.

The language of the statute, at least when applied to a situation where the proposed amendment is restricted to one end of a long block, is inexact; but the intention of

the Legislature to create a single, exact standard by which the per centum of protests shall in all cases be measured is clear. The courts must construe the language of the statute creating that standard to resolve uncertainties; the courts cannot create varying standards of measurement even to meet conditions which perhaps the Legislature did not envisage, when the Legislature has provided that a single standard shall in all cases be used. The Legislature has provided that the " frontage " shall constitute a linear standard of measurement. In this and similar statutes the word " frontage " denotes the line of property on a street. It excludes as a standard both the area and the length of the interior lines of the property of protesting owners. Here there is no uncertainty or room for construction. Uncertainty arises only from doubt as to the length of street frontage which may be included in the " frontage immediately in the rear " of the " frontage proposed to be altered."

Argument may be made that " frontage immediately in the rear " includes only the frontage of the plot, in one ownership, which is contiguous to the property " proposed to be altered " even though such plot be only a strip a few inches or feet in width. Opposing argument may be made that the frontage included should be fixed, regardless of accident of ownership, by some other test. Several possible constructions have been suggested. Certainly the owners of the plots immediately outside of and adjoining the boundary line of the property which it is proposed should be altered, are the parties who will be most directly affected by such alteration. The Legislature may, reasonably, have intended that such alteration should be made only by unanimous vote over the protests of the owners of twenty per centum of the frontage of the property most directly affected. We conclude that the Legislature intended that the frontage of such plots, in single ownership, whether such frontage be large or small, should be included in the " frontage immediately

in the rear" of the property proposed to be altered. Other construction by which part of such frontage might be excluded or by which other frontage might be included rests upon more doubtful inference and would perhaps create undesirable complexities. We adopt the construction which excludes such doubts and complexities. We are told that under every possible construction which has been suggested, the owners of at least twenty per centum of the frontage have presented protests. Concededly that is true under the construction we give to the statute. Therefore, the proposed amendment could not be made without a unanimous vote and the minutes of the meeting of May 22, 1931, showing that the resolution was adopted, are erroneous.

Even though the minutes of the meeting are erroneous and no valid amendment of the Zoning Use Map or Zoning Resolution was validly adopted, we may not reverse the order of the courts below if there was room for the exercise of discretion in denying a mandamus order to correct the minutes. Neither the orders nor the opinion of the Appellate Division indicate that the denial was solely as matter of law and not partly in the exercise of discretion. The question then arises whether as matter of law the petitioner had a right to compel the correction of the erroneous minutes. " When the material allegations of a petition for a writ are admitted, or not denied, and different inferences cannot be drawn therefrom, then only a question of law is presented and the decision is upon the merits and appealable to this court." (*People ex rel. Van Tine* v. *Purdy*, 221 N. Y. 396, 400.)

At the outset it must be noted that the petitioner is not asking that an officer of the city shall be compelled to take action for the cessation of a non-conforming use. " The remedy of mandamus may be withheld where the enforcement of a strict legal right would work unnecessary hardship." (*Matter of Warehousemen's Association*

v. *Cosgrove*, 241 N. Y. 580.) Any party who has acted upon the faith of the erroneous record should be given opportunity to be heard before the court compels official action against his property. (*Matter of Green* v. *Miller*, 249 N. Y. 88.) That is not the case here. The petitioner has proven that though the minutes of the Board show that a resolution amending the uses to which property within the district may be put, in fact no such resolution was adopted. The amendment not having been adopted, all property within the district is restricted to uses conforming to the original resolution. It does not appear that any property is now being put to any other use. If that, however, be the fact, then before a court of equity by mandamus or injunction compels the cessation of a non-conforming use, it must weigh the equities, and there might be room for drawing of different inferences and the exercise of discretion.

Here the petitioner asks only that the record may be corrected so as to show that the restrictions upon the use of the property have not been amended. The Board by erroneous entry in its minutes cannot render lawful what is in fact unlawful. The error merely serves to confuse public officers and others who may rely upon the minutes and to hamper proof of legal rights and enforcement of the law. Mandamus to compel correction of such error is an apt remedy. (*People ex rel. Burroughs* v. *Brinkerhoff*, 68 N. Y. 259; *People ex rel. Nostrand* v. *Wilson*, 119 N. Y. 515.) Correction of the minutes will not result in the creation of any new legal or equitable rights or in the destruction of any legal or equitable rights which may have been heretofore acquired by any person. It looks to future enforcement, without hindrance or confusion, of rights created by statute.

The question then is whether there is any substantial reason for a denial of the remedy of mandamus. (Ferris, Extraordinary Legal Remedies [1926], §§ 196 *et seq.*) "An

order denying mandamus cannot rest in discretion when there are no disputed facts, when the law is with the petitioner and when there is no reasonable basis for holding that other remedies are adequate; and there is no element of hardship or laches or other unequitable conduct." (*Matter of Brennan* v. *Board of Education*, 245 N. Y. 8, 16.) That is the case here. The petitioner, upon undisputed facts, has established that the law is with her. No other remedy would be adequate. She brought this proceeding promptly and has not been guilty of laches or other inequitable conduct. Fears that the mandamus would create hardship are, at least, premature, if not, indeed, without foundation. There is, as we have said, no proof that any property within the district is now devoted to a non-conforming use. If there be such property, and attempt be made to compel cessation from such use, the owners will still have their day in court to appeal to a benevolent discretion of the court. (*Southern Leasing Co.* v. *Ludwig*, 217 N. Y. 100.)

The order appealed from should be reversed, with costs in this court and in the Appellate Division, and the petition for a peremptory order of mandamus granted as prayed, with costs.

POUND, Ch. J., CRANE, KELLOGG and CROUCH, JJ., concur; O'BRIEN, J., not voting; HUBBS, J., not sitting.

Ordered accordingly.