In the Matter of the Application of CATHERINE NICHOLS, Petitioner, for a Peremptory Order of Mandamus against JOHN P. O'BRIEN, as Mayor of the City of New York, and Others, Constituting the Board of Estimate and Apportionment of the City of New York, and Others, Defendants.

Supreme Court, Kings County, October 12, 1933.

*Smith, Weynberg & Rich* [*Burt L. Rich* of counsel], for the petitioner.

*Arthur J. W. Hilly, Corporation Counsel,* for the defendant John P. O'Brien.

*McLaughlin & Stern,* for the defendants Smith and others.

*Milton Herz* and *Max H. Newman* [*Charles H. Kelby* of counsel], for the property owners in Manhattan terrace.

LOCKWOOD, J. Avenue J is a broad highway laid out through one of the high class home districts of the borough of Brooklyn.

Business on it has been limited to the blocks between the New York Rapid Transit Company (B. M. T.) railroad embankment at East Fifteenth street and Coney Island avenue. Values of the store property on these blocks rose to substantial figures with the result that they were reflected in the values of properties on the blocks to the east where, due to this rise in value and to the lessened demand for large private homes and to the increased traffic on the street, a number of the old residences were turned into club houses or restaurants or places of business, all resulting in an agitation to have restrictions lifted by zone changes so that business would be lawfully permitted on both sides of Avenue J on the blocks between the railroad embankment and Ocean avenue.

The efforts to bring about a change resulted in an application to the board of estimate and apportionment which came up early in 1933. The owners of all the lots fronting on Avenue J, between the railroad embankment at Sixteenth street and Ocean avenue, favored the change to business. Owners of plots in the rear, whose properties were deemed affected by the engineers in the board of estimate, opposed the change.

On February 17, 1933, the board of estimate and apportionment adopted a resolution amending the district maps to bring about said changes by a vote of, affirmative 13; negative 3.

The plaintiff, Catherine Nichols, on behalf of herself and other objecting property owners, promptly obtained an order to show cause and a stay of all proceedings pending a court of review.

The petitioner and the other objectors contend that the board of estimate and apportionment was without authority to adopt said resolutions without a unanimous vote because protests and objections were filed by the owners of more than twenty per cent of the frontage immediately in the rear of the frontage proposed to be altered.

The engineers of the board of estimate figured that the protesting frontage in the rear was less than twenty per cent and, therefore, the resolutions did not require a unanimous vote for adoption.

The all-important question here involved is the interpretation of section 242-b of the Greater New York Charter and section 24 of the Amended Building Zone Resolutions.

The pertinent portions are as follows: Section 242-b of the Greater New York Charter: " The board may from time to time, after public notice and hearing amend, supplement or change said regulations or districts, but in case a protest against a proposed amendment, supplement or change be presented, duly signed and acknowledged by the owners of twenty per centum or more of the

frontage proposed to be altered, or by the owners of twenty per centum of the frontage immediately in the rear thereof, or by the owners of twenty per centum of the frontage directly opposite the frontage proposed to be altered, such amendment shall not be passed except by a unanimous vote of the board."

Section 24 of the Amended Building Zone Resolution: "If, however, a protest against such amendment, supplement or change be presented, duly signed and acknowledged by the owners of twenty per cent or more of any frontage proposed to be altered, or by the owners of twenty per cent of the frontage immediately in the rear thereof, or by the owners of twenty per cent of the frontage directly opposite the frontage proposed to be altered, such amendment shall not be passed except by the unanimous vote of the Board."

The contentions of the city's representatives who seek to show that less than twenty per cent of affected owners filed protests in this case, are set forth in the affidavit filed on this motion by Vernon S. Moon, deputy chief engineer, board of estimate and apportionment.

" The method of calculating the percentages of owners ' immediately in the rear ' opposed to the passage of any proposed amendment to the zoning resolutions which our department has adopted in view of the serious ambiguity of the statute is as follows: ' Percentage: Percentage equals the sum of the street frontages of protesting adjacent lots immediately in the rear, divided by the total frontage to be changed. The method of calculating protests is the same for use or area change.'

" By way of illustration, we will take the instant case for the change of use: We add up the entire frontage of the streets proposed to be changed, including the frontage on the side streets to a depth of 100 feet. This constitutes the frontage proposed to be changed. We then totaled the frontage of all the protesting lots immediately abutting in the rear of the frontage proposed to be altered. This total was divided by the frontage proposed to be changed, thereby arriving at the percentage of those who were opposed.

" This method of calculation has been used by the office of the chief engineer with the approval of the board of estimate and apportionment since shortly after the date when the zoning resolution was first enacted down to the present time, except that since May 15, 1931, as the result of an opinion by the corporation counsel. * * * Upon the rendering of this opinion by the corporation counsel, we changed the method of calculation in accordance with his opinion. Prior to that opinion, in figuring protestants of the owners of property ' immediately in the rear ' we included the

entire side line of the lots of such protesting property instead of the frontage on the streets.

"On May 15, 1931, we received the above opinion from the corporation counsel, advising us that the term 'frontage' meant frontage on a public street, and that therefore, in calculating the frontage immediately in the rear, we should include only the street frontage of such property, and accordingly, from and after such date, we considered only the street frontage of the property immediately in the rear in fixing our percentages, but the method of calculation has not changed.

"Since the adoption of the zoning laws in this city, approximately 1,200 amendments have been approved and a considerable number have failed of adoption. In all of them without exception, where protests had been filed, we adopted the same formula for computing percentages under our construction and interpretation. To the best of my knowledge, in none of them was exception taken, except in the case of *Smidt* v. *McKee*."

The case of *Smidt* v. *McKee* (262 N. Y. 373), thus referred to, has meanwhile reached the Court of Appeals, which court rendered an opinion therein on July 11, 1933, unanimously reversing the Appellate Division and Special Term, and granting the petition for peremptory mandamus, requiring the board of estimate and apportionment to correct its minutes. In its opinion, the court says, by LEHMAN, J: "There is, apparently, no dispute in regard to the number of protests which were presented. The only dispute is as to the meaning of the words 'frontage immediately in the rear' of the frontage proposed to be altered. The language of the statute, at least when applied to a situation where the proposed amendment is restricted to one end of a long block, is inexact; but the intention of the Legislature to create a single, exact standard by which the per centum of protests shall in all cases be measured is clear. The courts must construe the language of the statute creating that standard to resolve uncertainties; the courts cannot create varying standards of measurements even to meet conditions which perhaps the Legislature did not envisage, when the Legislature has provided that a single standard shall in all cases be used. * * * Certainly the owners of the plots immediately outside of and adjoining the boundary line of the property which it is proposed should be altered, are the parties who will be most directly affected by such alteration. *The Legislature may, reasonably, have intended that such alteration should be made only by unanimous vote over the protests of the owners of twenty per centum of the frontage of the property most directly affected.*

"We conclude that the Legislature intended that the frontage of such plots, in single ownership, whether such frontage be large

or small, should be included in the ' frontage immediately in the rear ' of the property proposed to be altered  \*  \*  \*.

" We are told that under every possible construction which has been suggested, *the owners of at least twenty per centum of the frontage have presented protests.* Concededly that is true under the construction we give to the statute. Therefore, the proposed amendment could not have been made without a unanimous vote and the minutes of the meeting of May 22, 1931, showing that the resolution was adopted, was erroneous."

From a careful reading of said opinion and an examination of the record on appeal and of the exhibits in said case, it is clear that if the methods of computation sought to be used by the city engineers in the *Nichols* case were applied in the *Smidt* case, there would have been less than twenty per centum of the frontage of the property most directly affected, the frontage immediately in the rear objecting.

The language of the Court of Appeals: " Certainly the owners of the plots immediately outside of and adjoining the boundary line of the property which it is proposed should be altered, are the parties who will be most directly affected by such alteration. The Legislature may, reasonably, have intended that such alteration should be made only by unanimous vote over the protests of the owners of twenty per centum of the frontage of the property most directly affected," means that we must add the frontage of the property most directly affected — in this case, the property in the rear — and if more than twenty per centum in ownership of said frontage protests, the unanimous vote of the board of estimate is required to make the changes.

In the *Smidt* case only two out of seven of the owners of the adjoining rear lots deemed affected protested. Here in the *Nichols* case the owners of thirteen out of fourteen parcels abutting the area proposed to be changed and fronting on side streets, filed protests against the change from an E to a C area district and thirteen of the owners as against four including the railroad, of property immediately abutting the area to be changed and fronting on side streets filed protests against the change from a residence use to a business use.

Both section 242-b of the Charter and section 24 of the Building Zone Resolution, hereinbefore quoted, provide that " In case of a protest against a proposed  \*  \*  \* change, be presented  \*  \*  \* (a) by the owners of twenty per centum or more of the frontage proposed to be altered, (b) or by the owners of twenty per centum of the frontage immediately in the rear thereof; (c) or by the owners of twenty per centum of the frontage directly opposite the

frontage proposed to be altered," such amendment or change shall not be passed except by a unanimous vote of the board.

Subdivisions (a) and (c) do not apply because all of the frontage proposed to be altered consents and all of the frontage directly opposite consents, as both sides of the street are embraced within the area to be changed.

Subdivision (b) covers the situation here presented. The city authorities construe it to mean that in making the calculation to ascertain the percentage opposed, they take the frontage of the lots along Avenue J, plus their 100-foot frontage in depth on the side streets — the lots to be changed for business — and divide that into the street frontage of the lots immediately in the rear thereof that are in one ownership and that have filed protests, and if the result is less than twenty per centum they hold that only a majority and not a unanimous vote of the board is required to adopt the amendment for change.

As the block fronts on Avenue J are 200 feet in length and the corner lots all run 100 feet in depth on the side streets of each block, they have 400 feet of frontage to be changed. As the street frontage of the lots immediately in the rear to be affected by said change are in all but few exceptions 40 feet in width and frontage, making a total of 80 feet frontage of the lots in the rear on each block, it is readily seen that if this method of computation is correct, it would require a unanimous protest in almost every block to in turn require a unanimous vote of the board to make the change.

This court finds no justification either in mathematics, or in the law in the opinion of the Court of Appeals in the *Smidt* case for this method of computation.

The subdivision provides that if protests are filed " by the owner of twenty per centum of the frontage immediately in the rear thereof " a unanimous vote of the board is required to effect a change, which to this court clearly means that the computation should be made under the charter and the amended zone resolution and the decision of the Court of Appeals in the *Smidt* case, by adding the frontage of the property most directly affected, the plots in single ownership immediately outside of and adjoining the boundary line of the property which it is proposed should be altered; then adding protests filed by the owners of such lots and, if the percentage of protests filed is twenty per cent or more of the total frontage of the lots so affected, a unanimous vote of the board of estimate and apportionment is required in order to adopt the resolution providing for the amendment and changes.

An inspection of the neighborhood shows that a number of old

residences on Avenue J on these blocks have been allowed to run down. These owners would no doubt be benefited by the changes, but it is obvious that the changes proposed would be but the beginning of sweeping changes in the entire section. The value and the desirability of the fine private homes on the side streets immediately adjoining the Avenue J lots would be diminished and, in turn, the adjoining homes would each be damaged to a lesser extent, depending upon their distance from the avenue.

The change, if put through, will bring demands for an extension of the business district easterly from Ocean avenue and a lessening of values in the existing business sections nearby.

It is well that the Legislature saw fit to provide that no such drastic change in an entire section affecting directly and indirectly the interests of hundreds of home owners could be brought about without a unanimous vote of the board of estimate where there are protests from at least twenty per cent of the property which the Court of Appeals pointed out is " most directly affected." Indeed, since action was taken on the Avenue J proposition, the board of estimate, on March 10, 1933, adopted an amendment to sections 242-a and 242-b of the charter providing that a larger area shall be deemed directly affected. This amendment was approved by the mayor June 15, 1933. Applying this new provision to the Avenue J case would mean, instead of having lots 40 feet in frontage in the area deemed directly affected, you would have an area of 100 feet in the rear deemed directly affected — that is, the lots on Avenue J being 100 feet deep, under the new provision the land directly in the rear of the Avenue J lots to a similar depth or frontage of 100 feet, would be deemed affected.

It follows, then, that the practice of the board of estimate and apportionment in ascertaining the percentage of protesting frontages " immediately in the rear " by determining the relation of the total frontages to be altered to the protesting frontages in the rear, instead of figuring what percentage the rear protesting frontages bear to the total frontages in the rear, is erroneous. Petition for peremptory mandamus granted.