**BRADFORD et al. v. COLE et al.**

No. 14485—Opinion Filed July 31, 1923.

(Syllabus.)

**Statutes — Special Acts — Unconstitutionality—Creation of Consolidated School District.**

Chapter 229, Session Laws 1923, creating a consolidated school district for white pupils comprising a district formed out of territory existing in independent school districts Nos. 36, 55, and 56, Okmulgee county, is a special law and regulates the affairs of the school districts in a manner other than that provided by general laws of the state and is violative of subdivision (b), sec. 46, art. 5, of the Constitution,

which prohibits the Legislature from passing any special law "regulating the affairs of counties, cities, towns, wards, or school districts. * * *"

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action in the nature of quo warranto by R. B. Bradford and others against John Cole and others, officers of Consolidated School District No. 9, Okmulgee County. Judgment for defendants, and plaintiffs bring error. Reversed and remanded with directions.

Charles A. Dickson and E. M. Carter, for plaintiffs in error.

Wellington L. Merwine, for defendants in error.

COCHRAN, J. This action, instituted in the district court of Okmulgee county, was in the nature of a quo warranto proceeding against the defendants, who were officers of consolidated school district No. 9, Okmulgee county, Okla., and involves the constitutionality of House Bill No. 463, passed by the Legislature of 1923. The act was passed for the purpose of creating a consolidated school district for white pupils to comprise a district formed out of territory existing in school districts Nos. 55, 36, and 56, Okmulgee county. Okla. The petition of the plaintiffs alleged that the act of the Legislature was unconstitutional and in violation of subsections b and q, of section 46, art. 5, of the Oklahoma Constitution. A demurrer was sustained to the petition, and the plaintiffs have appealed to this court.

Article 5, section 46, of the Constitution, so far as material to the consideration of the questions here involved, provides:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: * * *

"(b) Regulating the affairs of counties, cities, towns, wards, or school districts. * * *

"(q) Regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes."

The defendants contend that the act under consideration does not regulate the affairs of the school district or regulate the management of public schools, but simply creates a new district out of three districts existing at the time of its passage and provides that the districts so organized shall be managed and conducted according to existing general laws of the state of Oklahoma, and, hence, the act is not in violation of the foregoing constitutional provisions.

It is conceded that the act in controversy is a special law and that the provisions of the Constitution for the enactment of special laws was complied with, and the only question is as to whether this act comes within one of the classes mentioned in article 5, sec. 46, of the Constitution. prohibiting the passage of special laws. The answer to this question depends upon the construction given to the phrases "regulating the affairs of school districts" and "regulating the management of public schools." It has been held that similar provisions should receive a broad construction instead of a narrow or technical construction, and with the idea of carrying out the intention of the makers of the Constitution. In Hall v. Bell County (Tex. Civ. App.) 138 S. W. 178, the court had under consideration the constitutional provisions prohibiting the passage of special laws "regulating the affairs of counties, cities, towns, wards, or school districts," and in the opinion the following language is used ·

"The word 'regulating,' as used in the constitutional provisions, should not be given a narrow or technical signification, and (held) that the act establishing the office of county auditor was an act regulating county affairs within such section, and hence the act amending the same by exempting Bell county was a special or local law regulating county affairs, and was therefore unconstitutional."

This decision was affirmed by the Supreme Court of Texas in the case of Bell County v. Hall, 153 S. W. 121, and the following language was used:

"In relieving Bell county from the operation of the general law, this act, in effect, changed the administration of its affairs in every particular provided by the general law, and thus by indirection regulated its affairs as effectually as though it had directly and affirmatively prescribed a different method for their management."

In Territory v. Gutierrez (N. M.) 78 Pac. 139, the constitutional provisions under consideration prohibited the passage of a special law regulating the affairs of counties, and in discussing the meaning of the word "affairs" the court said:

"A Constitution is not to receive a technical construction, like a common-law instrument or statute. It is to be interpreted so as to carry out the great principles of government, not to defeat them. Commonwealth v. Clark, 7 Watts & S. 127. * * * When it speaks of 'affairs' of a county, it means such affairs as affect the people of that county."

At that time the act in controversy was passed, the general laws of the state prescribed a method by which separate school districts could be consolidated. It also prescribed how common school districts, independent districts, and consolidated school districts should be managed, and further provided for the maintenance of separate schools for the benefit of whites or negroes, depending upon which was in the minority in each school district, and provided a method for raising revenue to pay the expenses of such separate schools Under the provisions of this act, school districts were consolidated in a manner not prescribed by the general law. Under the existing law, these school districts were permitted to operate under the laws applicable to independent school districts, until such time as the voters of the districts should authorize a consolidation in the manner provided by statute. The law applicable to the management of independent school districts is in many respects different from the law applicable to consolidated school districts. The act in controversy not only abolished existing school districts and created a new district, but in effect changed the administration of the affairs of the territory embraced in the new district by making applicable the laws which apply to consolidated school districts instead of the laws applying to independent school districts, which had theretofore governed the district in the administration of its affairs, and thus the regulation of the affairs of the district and the management of the schools of the district were as effectually changed as though the act itself had prescribed a different method for the management of the school districts.

It is true that the act does not attempt to change the law applicable to the management of consolidated districts, but the vice is not in prescribing a law for the management of this consolidated district different from that applying to other consolidated districts, but in making applicable under the changed condition laws which applied to the territory which is embraced in the new district.

We are also of the opinion that the formation of consolidated school districts under the general law constitutes a very vital part in the regulation of the affairs of the school district, and the change provided in this act constitutes a regulation of the affairs of the districts involved. The general laws provided for the management of the schools in separating whites and negroes by providing for separate schools, and the act in controversy regulates the affairs of the school and the management thereof in providing for the creation of this consolidated school for whites, which takes the place of the general law providing for the maintenance of separate schools. Under the provisions of this act, a consolidated school district is created which is to be governed by the laws applicable to consolidated school districts in general. Although conditions might be such that separate schools should be maintained for the whites and revenue raised for the maintenance thereof under the provisions of the law applying to separate schools, this act would authorize, instead of such separate schools, the creation of a consolidated district for whites and same would be maintained in the manner provided by general law for the support of consolidated school districts. In Territory v. School District No. 83, 10 Okla. 556, 64 Pac. 241, the court had under consideration a statute which created a school district out of territory comprising several other districts, and this act of the Legislature was held to violate the act of Congress which provided:

"That the Legislature of the territories of the United States now or hereafter to be organized shall not pass local or special laws in any of the following enumerated cases, that is to say * * * providing for the management of common schools. * * *"

—and in the opinion the following language was used:

"The management of the school which is included under the jurisdiction of school district No. 5 has been interfered with. A district has been created by the Legislature in violation of the specific provisions of the general act providing 'for the support and regulation of the common schools,' which provides that it is 'the duty of the county superintendent of public instruction to divide the county into a convenient number of school districts and to change such districts when the interests of the inhabitants thereof require it,' and it gives to the residents of the district who are interested the right of appeal to the board of county commissioners. The general jurisdiction of the county superintendents of both Logan and Oklahoma counties has thus been interfered with. The Legislature has assumed in this particular instance to do the thing which is, by the statute, made the duty of the county superintendent to do, and it has carved out a district from portions of each of the two counties mentioned, interfering with the management of the complaining school district, to the lessening of the assessable property upon which the school district and the maintenance of its school are dependent for support, and cut down the support of the school by several months in

each year, by an act of the Legislature which precludes all those who may think themselves aggrieved. that statutory right and privilege which is provided for their relief in the statute."

In. that opinion the court quotes with approval from State v. Powers, 38 Ohio St. 54, as follows:

"No amount of logic could make plainer the proposition that the common schools of the state, as a subject for legislation, is one of a 'public nature,' and that all laws in relation to the organization and management thereof must have a uniform operation throughout the state. * * * It does not require a prophetic eye to see, that local legislation to suit the views of this locality and of that would soon impair the efficiency of our public schools—that while in some places they might be elevated, in others they would be degraded. True, in some localities, from density of population and other causes, different necessities may exist, requiring modifications in the management of schools in order to attain the greatest efficiency. But for all such cases, ample provisions can be made by judicious classification and discrimination in general laws."

In Territory v. School District No. 83, supra, the court said further:

"Indeed, we do not see how it can be argued with any force of reason that the Legislature may, by such acts as these, intrude into the general system of school management by attempting to take hold of some area in a particular locality already included within other school districts, and create out of that area a special school district, and take away taxable property, revenue, scholars, and general support from a particular school district, without not only interfering with its management, but without conceding to the territorial Legislature the power to destroy the particular district itself, and if carried far enough, to destroy the general school system itself."

In the case at bar, the effect of the act of the Legislature, if permitted to stand, would be an interference with the management of the school districts involved contrary to the general provisions of the statute and a denial to this school district of the right to regulate its affairs and manage its school according to the general laws of the state of Oklahoma, and substituting therefor a law which would destroy the school districts embraced in the new district, and substituting for the laws which had been applicable to the management and regulation of its affairs different laws which could not have otherwise become applicable except by an expression of the voters of the district involved, and substituting for the law regulating the man-

agement of the affairs of the school district as to the maintenance and operation of separate schools an entirely different and distinct set of laws. Such being the case, we cannot escape the conclusion that the act in controversy is in violation of the Constitution.

The plaintiffs rely upon the case of Chickasha Cotton Oil Co. v. Lamb, 28 Okla. 275, 114 Pac. 333, but that case is not in point on the question under consideration, as in that case the act of the Legislature complained of provided for the establishment of a superior court in Custer county and did not come within any of the provisions prohibiting the passage of special laws.

We are of the opinion that the judgment of the trial court should be reversed, and cause remanded, with directions to overrule demurrer to the petition, and that further proceedings be had consistent with the views herein expressed, and it is so ordered.

JOHNSON, C. J., and KENNAMER, NICHOLSON, HARRISON, and MASON, JJ., concur. BRANSON, J., dissents.