### UNION SCHOOL DISTRICT NO. 1, KAY COUNTY v. FOSTER LBR. CO.

No 19863. Opinion Filed Jan. 21, 1930.

Rehearing Denied April 15, 1930.

Sam K. Sullivan, Neal A. Sullivan, and R. J. Shive, for plaintiff in error.

G. A. Chappell, for defendant in error.

HALL, C. The Foster Lumber Company commenced this action against union school district No. 1, Kay county, to recover the sum of $190.60 on an account. The account was for furnishing lumber and certain material to the school district to make certain repairs on the schoolhouse therein. The account was created by a contract entered into between the school board, or a majority thereof, and the plaintiff, the Foster Lumber Company. The account for which judgment was rendered was created on and after the 2nd day of July, 1925; that is, the material in a sum equal to the judgment was purchased and furnished between the 2nd day of July and the 22nd day of July. At the trial it was stipulated by and between the parties that at the time the material was purchased and delivered, the school district had no available funds in the treasury, no tax levy had been made, and no estimate had been made and approved to purchase said material; but—

"* * * Thereafter, and on the 7th day of July, 1925, an estimate was made by the board for an amount sufficient to pay for said lumber, and that said estimate was filed with the excise board of Kay county, Okla., on the 15th day of July, 1925, and that said estimate was allowed by the said excise board of Kay county, Okla., and appropriation made on the 25th day of August, 1925, to pay said bill, the same being the estimate to cover the expense of said municipality of said school district for the fiscal year beginning July 1, 1925."

It was further stipulated and agreed that the purchase price charged for the material furnished was fair, reasonable, and just, and that the material was sold and delivered in good faith, and that the material furnished was for the purpose of making outside openings or doors to the schoolhouse and to repair and fix the screens on the building so as to be detached from the inside, in compliance with a rule of safety promulgated by the Fire Marshal of the state pursuant to an act of the Legislature.

The court rendered judgment for the plaintiff for the sum of $171.25. The defendant appealed, and to reverse the judgment, it submits two propositions: First, that at the time the contract was entered into, to wit, on the 2nd day of July, 1925, the contract was illegal; (a) for the reason that no unappropriated funds were available to pay the account, and (b) that the excise board had not met and had not approved the estimate made to take care of the expenditure.

The second proposition relates to the invalidity of a certain special act of the Legislature purporting to authorize and direct the rendition of a judgment in this particular case. The attorney for plaintiff at that time was a member of the Legislature, and the special act is referred to in the brief as "Mr. Chappell's special act," but is otherwise identified as chapter 179, Session Laws 1927.

Discussing the second proposition first, it is to be noted that counsel for defendant (plaintiff in error herein) contend that this special act is unconstitutional and void for three or four distinct reasons. We entirely agree with the counsel in this respect, and so hold, that the special act is absolutely void and repugnant to both the letter and the spirit of the Constitution. The said special act offends section 52, art 5 of the Constitution, which provides as follows:

'After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or to destroy any existing defense to such suit."

The special act offends that part of the Constitution (section 1 of art. 4) which divides our government into three departments, legislative, executive and judicial. This legislative act seeks to invade judicial power, in that it attempts to adjudicate a particular case by prescribing a rule contrary to the general law. That cannot be done. In re Ervine's Appeal (Pa.) 55 Am. Dec. 499; Shawnee County v. Carter, 2 Kan. 115; Stevens v. Hicks, 156 N. C. 239, 72 S. E. 313; 12 C. J. 815.

The act also offends section 46 of art. 5 of the Constitution, especially subdivisions "o" and "q" thereof. Subdivision "o", which prohibits the Legislature from passing a special act providing or changing the methods for the collection of debts, etc., and subdivision "q", which prevents the Legislature

by a special act from regulating the management of public schools, the building or repairing of schoolhouses, and the raising of money for such purposes.

The first proposition referred to in the introduction presents for determination the following question: Where a municipality purchases materials or supplies after the beginning of the fiscal year, but before an estimate therefor has been made and approved, but later, and thereafter, an estimate therefor is made and approved, does this appropriation, if made to pay for the particular item, create a valid obligation on the part of the municipality to comply with the terms of the contract or pay for the materials?

This question is not free from the difficulties present in nearly all cases where the liability under contracts with political bodies is the subject-matter of consideration. The particular question has never before been squarely presented to this court.

We are of the opinion that the question must be answered in the affirmative. Therefore, under the record in this case and stipulations made, the court was warranted in rendering judgment for the plaintiff in the sum of $171.25, this sum representing the account for the lumber furnished after the 2nd day of July, 1925, and which was conceded to have been furnished under a contract entered into on the 2nd day of July of the same year.

The 1st day of July, 1925, was the beginning of the fiscal year of 1925-26. It is true that the excise board, at the time the materials were furnished and the contract made, had not approved an estimate made for such lumber and materials, but it clearly appears from the stipulations that, on or about the 7th day of July, 1925, an estimate was made, and on the 25th day of August following, an appropriation was made by the excise board to pay this indebtedness; and it therefore logically follows that a tax levy for the fiscal year was made to take care of this item of expenditure. The contract having been made and the materials having been furnished during the fiscal year in which the appropriation was expressly made for the purpose of paying the particular account, the contract was valid from the time the estimate was approved. In other words, the contract in its inception—it having been made after the beginning of the fiscal year—was conditionally valid or only conditionally void; a contract wholly at the mercy or the will of the school board or the excise board; that is, the school board could make or not make an estimate to take care of the

contract. It was within the discretion of the excise board to either approve or disapprove the estimate. Had the excise board failed to make the appropriation to pay for this material, the plaintiff would have had no standing whatever in court. The cases on this point are all in one direction. The latest expression is Board of County Commissioners of Creek County v. Robinson, 140 Okla. 142, 282 Pac. 299. Plaintiff in error cites the case of Gentis et al. v. Hunt et al., 121 Okla. 71, 247 Pac. 358, in which it was said:

"The intention and plain purpose of section 26, art. 10 of the Constitution of Oklahoma, is to require school districts and other subdivisions of the state government to carry on their operations upon a 'cash or pay as you go' plan. The revenues of each year must take care of the expenditures of such year, and any liability sought to be incurred in excess of such current revenue in hand or legally levied is void unless it be authorized by a vote of the people, and (then) within the limitations provided by said section."

That principle of law has been announced and reannounced in all the cases before this court on the particular point. That declaration of the law, however, is not inconsistent with the rule that, where a contract is entered into with a municipality during the particular fiscal year whereby it purchases materials for that particular fiscal year, but funds to pay for same are not provided for by the excise board before such contract is entered into, and before such articles are furnished, but later funds are provided, that is, an appropriation is made expressly to pay for same, said contract is within the law, and is not repugnant either to section 26 of art. 10 of the Constitution, or Comp. Stat. 1921, section 8638.

Fully recognizing the rule that municipalities must pay as they go, and that the delinquencies or liabilities of one year cannot be carried over into another fiscal year, the practical side of the situation must be considered, when such consideration does not violate some express provision of the statutes or the Constitution. Excise boards, as a rule, do not approve the various estimates until some considerable time after the beginning of the fiscal year. They cannot approve any estimate before the last Saturday in July. Often their work is not complete for two or three months after they formally convene. They cannot meet under the law until the last Saturday in July, and that fact necessarily delays their work for at least one month. In this case, the estimate was approved on the 25th day of August. To say that contracts entered into after the

beginning of the fiscal year and before the final approval of the estimates by the excise board, are void, would be extending the language of both the statutes and the Constitution. In this connection, it is well to examine the language of our Constitution and the controlling statutes themselves. The pertinent part of section 26, art. 10 of the Constitution, which is that part of that document relating to the point at issue, reads as follows:

"No * * * school district, * * *shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose.* * *"

The relevant part of section 8638, Comp. Stat. 1921, is as follows:

"It shall be unlawful for the board of county commissioners, the city council, cr the commissioners of any city, the trustees of any town, board of education, township board, school district board, or any member or members of the aforesaid commissioners, or of any of the above-named boards, to make any contract for, incur, acknowledge, approve, allow or authorize any indebtedness against their respective municipality, or authorize it to be done by others, in excess of the estimate made and approved by the excise board for such purpose for such current fiscal year, or in excess of the specific amount authorized for such purpose by a bond issue."

From a reading of the above provision of the Constitution, it will be thus seen that this constitutional provision is purely a limitation statute, and not one of procedure It simply says that a municipality cannot become indebted in an amount in excess of the revenue which can be lawfully raised for the fiscal year, except by a vote of the people as therein set forth. This last provision, as well as the others, clearly shows that the makers of the Constitution had in mind the amount of the indebtedness and not detail legislation. The framers of the Constitution were not concerned with the procedure for making contracts or their priority. The purpose was to fasten a limitation as to municipal expenses, beyond which limitation neither the Legislature nor the municipalities themselves could pass. The Legislature was left to arrange the details. A similar construction was placed upon the Arkansas Constitution in Saddler v. Cravens, 93 Ark. 11.

Section 8638 of the statutes simply provides that the municipal officers shall not make contracts for or incur any indebtedness against the municipality in excess of the revenue provided for by the excise board for the fiscal year. That statute is simply an amplification of the provisions of the Constitution, except that it provides certain penalties to be visited upon the officers for incurring such excess indebtedness or making such contracts. Further than that, the statute is simply a limitation statute, binding upon municipal bodies and parties contracting therewith.

There are good reasons why municipalities should not contract for labor or material until an appropriation therefor has been made. But these reasons cannot prevail unless authority for such finds definite form in the statute or the Constitution. In this connection, it should be understood that our statutory and constitutional provisions quoted in the foregoing paragraphs are unlike those statutes of which the statutes of the state of Indiana are representative. The Indiana statutes provide (or did provide) in express language, as follows:

"No board of county commissioners, officer, agent or employee of any county, shall have power to bind the county by any contract or agreement, or in any other way, to any extent beyond the amount of money at the time already appropriated by ordinance for the purpose of the obligation attempted to be incurred, and all contracts and agreements, express or implied, and all obligations of any and every sort, beyond such existing appropriation, are declared to be absolutely void." Sec. 5594 e 1, Burns Ann. St. Ind. 1901.

The Colorado statutes provide that no contract shall be made by a municipality "unless an appropriation shall have been previously made concerning such expense."

As already fully set forth, no such language is contained in our statutes or Constitution.

At the time our Constitution was framed, and at the time our statutes relating to the fiscal management of municipalities and their power to contract were enacted, this subject was not a new one. We must conclusively presume that the makers of the Constitution and the Legislature gave this particular subject—municipal indebtedness, the raising of revenue and the manner thereof for the purpose of carrying on the functions of government—serious and careful consideration; and if the Legislature had intended that such a contract as the one in the present case should be absolutely void, they would have done what the the Legislatures of the states of Indiana, Colorado and Louisiana did, said so in express language to that effect.

Another reason which impels us to the conclusion that such a contract is not absolutely void, but conditionally void, is the provision in our law (sec. 9698, Comp. Stat. 1921,) which provides that the excise board of the county shall meet on the last Saturday in July. No provision is made for its meeting at an earlier date. The Legislature must have understood and appreciated the partial strangulation of municipalities, especially school districts, by the cessation of an important government function, for at least one month during the fiscal year. With this assumption, it is a reasonable deduction that the Legislature never intended the construction which plaintiff in error would place upon the Constitution and the statutes, else the Legislature would have provided for estimates to be made and the meeting of the excise board to be before, or at least on, the first day of the beginning of the fiscal year.

Counsel for plaintiff in error, in their very interesting argument, ask the question that, in case a number of contracts are entered into between different persons for labor or material, and that in case the excise board meets and approves an amount insufficient to pay for all these purchases, what would be the basis of recovery—whether some should take all and others none, or would there be a proration? It is unnecessary to engage in a game of mental gymnastics in an attempt to answer this question. It is sufficient to say that more complicated questions arise in the administration of other phases of the law than the one involved in the particular question suggested.

Plaintiff in this case sold the material and contracted for its sale within the fiscal year in which the excise board later regularly made an appropriation therefor. We conclude that the judgment of the court, which was restricted to the items aggregating the sum of $171.25, was within the law.

The judgment is therefore affirmed.

HERR, DIFFENDAFFER, F O S T E R, and TEEHEE, Commissioners, concur.

BENNETT, Commissioner, dissents.

By the Court: It is so ordered.