INDEPENDENT SCHOOL DISTRICT NO. 89 OF OKLAHOMA COUNTY, a Public Body Corporate, Appellee,

v.

The OKLAHOMA CITY FEDERATION OF TEACHERS, LOCAL 2309 OF the AMERICAN FEDERATION OF TEACHERS, AFL–CIO, an Unincorporated Association; et al., Appellants, (two cases).

Nos. 54235, 54554.

Supreme Court of Oklahoma.

June 10, 1980.

Eric J. Groves, Oklahoma City, for appellees.

Kenneth R. Nance, Oklahoma City, for appellants.

SIMMS, Justice:

These appeals arise from litigation generated by last year's teachers' strike in Oklahoma City. In these companion cases we are asked to review two orders of the district court which affect the legal status of the Oklahoma City Federation of Teachers, (OCFT), to act as the bargaining agent for the area educators. In both appeals, the appellants are the OCFT, and appellees are the Independent School District No. 89 and the individual members of the school board, hereafter referred to as District.

In both appeals the issue presented is the proper construction of the duration of sanctions imposed by 70 O.S.1971, § 509.8, on a bargaining representative once that organization or its members engage in a strike.

The statute, in its entirety, provides: "The procedure provided for herein for resolving impasses shall be the exclusive recourse of the professional organization. It shall be illegal for the professional organization or the nonprofessional organization to strike or threaten to strike as a means of resolving differences with the board of education. Any member of the professional or nonprofessional organization engaging in a strike shall be denied the full amount of his wages during the period of such violation. If the professional or nonprofessional organization or its members engage in a strike, then the organization shall cease to be recognized as representative of the professional or nonprofessional educators and the school district shall be relieved of the duty to negotiate with such organization or its representatives."

The relevant facts are these. The District initially sought, through an action for declaratory judgment, a judicial determination of the respective rights and obligations of District and OCFT in light of the existing teachers' strike. Based upon its finding that OCFT, the recognized representative of the educators, and its members were in violation of § 509.8, and that OCFT had thereby forfeited its right to act as bargaining agent, the court on September 18, 1979, awarded District the following temporary injunctive relief: OCFT was enjoined from acting as bargaining agent for educators employed by District; District was enjoined from recognizing OCFT as bargaining agent and from negotiating with OCFT; and District was enjoined from paying wages to any teacher who did not report for

duty but engaged in the strike. The appeal from this declaratory relief is the substance of 54,235.

On September 25, OCFT filed a petition with the District for election of a bargaining representative for the teachers and for its name to appear on the ballot. The District sought relief from the district court which was denied; the court ordered OCFT placed on the ballot notwithstanding the facts that the strike had ended and that the temporary injunctions remained in full force and effect. The order specifically did not make any finding or determination of what the status of OCFT would be after the election. The election was held October 30 and OCFT was certified the winner and majority choice of teachers to act as their bargaining representative.

The District thereafter sought declaratory relief as to whether it could now recognize the OCFT without violating the court's temporary injunctions. The district court found that it had been divested of jurisdiction in the matter based on the appeal of the temporary injunction to this Court. Upon application, we assumed original jurisdiction and, exercising superintending control over the district court, returned the matter for that court's determination of: (1) the effect, if any, that the court's injunction enjoining recognition of OCFT had upon recognition of OCFT as bargaining representative in light of its re-election; and (2) the duration of sanctions imposed upon bargaining representatives by § 509.8.

Pursuant to that order the district court held a hearing and decided those questions in the following manner: (1) that the re-election of OCFT did not affect the injunction; and (2) that OCFT should suffer some "retribution" for engaging in an illegal teachers' strike and that a suitable period of duration for retributive sanction would be until December 31, 1980. The court therefore ordered the temporary injunction enjoining OCFT from acting as bargaining representative to continue until December 31, 1980. That order is the subject of the appeal in 54,554.

At this point we stress that we must address the appeals in the posture in which they came to this Court. The sole relief sought by the District was by way of declaratory judgment defining the rights, duties and obligations of the parties. The District did not seek to enjoin the strike or attempt to compel the striking teachers to return to the classroom through the office of a mandatory injunction. We are therefore not presented with any question concerning punishment imposed as and for contempt for violation of a court order.

The statute is ambiguous as to the duration for which a professional organization shall *cease to be recognized.* The particular provision in question reads:

"If the professional or nonprofessional organization or its members engage in a strike, then the organization shall cease to be recognized as representative of the professional or nonprofessional educators and the school district shall be relieved of the duty to negotiate with such organization or its representatives."

With arguments to support their respective views, the parties submit that possible constructions of the time period for which the bargaining agent would cease to be recognized and the district relieved of its duty to negotiate, are: (1) during the period of the strike; (2) until a new election is held; (3) forever; or (4) for a fair and equitable period established by a trial judge exercising his discretion. The variety of possible interpretations underscores the necessity for judicial construction to establish the meaning and scope of the statute.

Both parties concede that this is a case of first impression in Oklahoma and that no other state has a statute which reads like our § 509.8.

The cardinal rule in construing legislation is that the intention of the Legislature, when ascertained, must govern, and that to ascertain that intent all the various portions of the legislative enactments upon the particular subject, including subsequent enactments should be construed together and given effect as a whole. *Appeal of Price, 88 Okl. 156, 212 P. 424 (1923).*

▮ In construing statutes, harmony, not confusion, is to be sought and when parts of an act are reasonably susceptible of a construction which will give effect to both and to the words of each, without violence to either, such construction should be adopted in preference to one which, though reasonable, leads to the conclusion that there is a conflict. *Rogers v. Oklahoma Tax Commission, Okl., 263 P.2d 409 (1953)*.

The purpose of the 1971 Act, 70 O.S.1971, §§ 509.1, et seq., creating methods for negotiations between school employees and districts and providing for election of a bargaining representative of the employees, is clearly expressed in § 509.1 as a means to "strengthen methods of administering employer-employee relations through the establishment of an orderly process of communications between school employees and the school district." The mode of "communication" is mandated to be through a professional organization elected by the educators as their bargaining agent. The election procedures created by the Legislature to implement the Act are of great importance in resolving the issue before us. Section 509.2, as originally enacted, Oklahoma Session Laws, ch. 325, § 2 (70 O.S.1971, § 509.2) provided only generally that the "local board of education shall recognize a professional organization" securing authorization signed by a majority of professional educators employed by the district; that the bargaining representatives of the organization "shall be elected by a majority of the professional educators" at "an election called after proper notice is given" to the educators and that the organization shall be the exclusive representative of the educators.

In 1978 the statute was amended, Laws 1978, ch. 221, § 1, now 70 O.S.Supp.1979, § 509.2, to provide in greater detail the method and procedure for choosing professional organizations in school districts with an average daily attendance of 35,000. The amended provisions, applicable to Oklahoma City, set forth in much more specific detail, among other things, the manner and procedure for calling and conducting elections.

Of particular significance to the problem before us, is the fact that § 509.2 now provides that after the first election held under the (1978) Act, "[n]o election shall be directed to be held by a local board in a bargaining unit within which a valid election was held in the preceding two (2) years." § 509.2(C)1. This proscription on an election coming more frequently than every two years is repeated at § 509.2(C)6.

This proscription is not qualified in any manner. The Legislature did not provide for an election of a bargaining representative to be held in the event of a strike. They certainly had an opportunity to so provide in the amendments to § 509.2 if it had been their intention to decertify or disqualify, either indefinitely or permanently, a professional organization whose members engage in an illegal strike.

▮ The title to an act is an additional guide to ascertaining legislative intent. *Phillips v. Oklahoma Tax Commission, Okl., 577 P.2d 1278 (1978)*. The title [1] is silent as to any length of sanction imposed on a professional organization for striking. The title does not even mention non-recognition.

Section 509.8 provides that the penalty for individual members for engaging in a strike shall be denial of wages "during the period" of the strike. Immediately following that language are the provisions for non-recognition of the organization and relieving the school district of the duty to negotiate. The subject matter of § 509.8 is "strikes" and the *only* provision for time of penalty set forth in the statute "is during the period of such [strike]".

---

1. The relevant portion of the title, Laws 1971, c. 325, provide:

"An Act relating to school; prescribing methods for negotiating between school employees and employing school districts; * * * providing that local boards of education shall recognize representatives selected by a majority of professional educators and nonpro-

fessional educators, respectively, and prescribing procedure for selecting such representatives; * * * making strike or threat to strike by professional organization illegal and providing penalties; providing that in event of strike school districts shall be relieved of duty to negotiate; * * *.

The statute does not say that the organization shall be decertified or disqualified or otherwise cease to be the representative of the members, but only that it "shall cease to be recognized" as such representative. There is no provision in the entire Act for decertification or recertification of a professional organization.

■ The presumption is that the Legislature expressed its intent in a statute and that it intended what it expressed. *Rath v. LaFon, Okl., 431 P.2d 312 (1967).*

■ We conclude that the Legislature intended the sanction of non-recognition against a professional organization to last only for the duration of a strike.

To hold otherwise, and find that § 509.8 authorizes non-recognition of an organization either for some indefinite period past the end of the strike or disqualified forever, would destroy the purpose of the Act by rendering the provisions creating an "orderly process of communication" meaningless and nugatory. The heart of this orderly process for collective bargaining is the representation of the educators by an exclusive bargaining agent selected through specific election procedure. Under the statutory scheme this election procedure may not occur more frequently than every two years. If we were to hold that non-recognition could be imposed on an organization past the end of a strike, it would result in taking away from the educators the very thing the Act was designed to give them—the right to be represented by an elected representative in collective bargaining. The loss of this right would be for a lengthy time, possibly up to two years should a strike occur immediately after an election, as the statute proscribes without qualification in election at less than a two year interval. Such a holding would place chaos and conflict in an otherwise harmonious system of legislation, particularly emasculating the amendments to § 509.2, making them useless and ineffective. The Court will not presume that in enacting legislation or amendments to legislation, the Legislature

has done a vain or useless act. *In re Supreme Court Adjudication, etc., Okl., 597 P.2d 1208 (1979).*

■ For these same reasons we may not uphold, as appellees urge us, the "equitable" solution created by the trial court. Nothing in the Act or § 509.8 would support an interpretation allowing a penalty period to be established at the discretion of individual trial judges. Also, there is no room under these statutes for an "equitable" creation of rights and penalties. Equity follows the law and where rights of parties are clearly defined and established by law, equity has no power to change those rights. While maxims of equity will be invoked to protect an existing right, they may not be invoked to create a right where none exists. *Phelan v. Roberts, 182 Okl. 202, 77 P.2d 9 (1938); Welch v. Montgomery, 201 Okl. 289, 205 P.2d 288 (1949).*

The District contends that the intent of the Legislature to eliminate strikes by public employees is clear and that an interpretation of § 509.8 limiting the sanction of non-recognition for the time period of the strike is not practical, inasmuch as a professional organization would control its own qualifications to represent its members and bargain on their behalf. It could strike at will and suffer only the suspension of bargaining. The OCFT, on the other hand, contends that the legislative intent to deter strikes is effected by withholding wages from individual members and refusing to recognize their organization for so long as the strike continues.

■ Whether a stronger sanction against a professional organization, one which is more in line with the retribution sought to be imposed on the OCFT by the trial judge, would be a more effective deterrent to striking by professional organizations and their members is a matter for the legislature. We note that other states have taken a much more aggressive attitude toward professional organizations which strike against the public and have enacted severe

statutory sanctions at profound variance with our § 509.8.[2]

Questions pertaining to the wisdom of our chosen policy of imposing minimal sanctions on professional organization whose members engage in strike and its practical efficiency in collective bargaining negotiations are not ours to make. The Legislature is charged with the duty of establishing and maintaining a system of public education by Article 13, § 1 of the Oklahoma Constitution. In furtherance of this duty it enacted 70 O.S.1971, § 509.1, et seq., and 70 O.S.Supp.1979, § 509.2, as its legislative expression of the desirability of collective bargaining and the procedures by which it should be implemented.

■ Our function is limited to examining the record to determine if the trial court followed the provisions of § 509.8. We may not substitute our judgment for the legislative will expressed in that statute.

■ We hold that the non-recognition imposed by § 509.8 against a professional organization must be construed as limited in time to the duration of a strike. Likewise, the school district is relieved of the duty to recognize the organization, otherwise imposed by § 509.2, for only the duration of a strike.

■ Nothing in this opinion should be interpreted as condoning an illegal strike against the public and the public school system, we have merely construed those sanctions imposed for such a strike provided by the Legislature as we are required to do by the Constitution.

Having examined the record and determined that the evidence is sufficient to sustain the trial court's finding that OCFT was culpably engaged in an illegal strike, we therefore Affirm the trial court's issuance of the temporary injunction in its original form relieving the Board of the duty to negotiate with the OCFT while the organization and its members were on strike. Inasmuch as appellants present no authority to support their argument that injunctive relief against the school district was beyond the power of the trial court to grant, we do not consider it. The judgment in 54,235 is Affirmed. The subsequent order supplementing and modifying the temporary injunction is Reversed with Directions to Vacate the Judgment rendered against OCFT. The judgment is 54,554 is Reversed with Directions.

LAVENDER, C. J., and WILLIAMS, HODGES, BARNES and HARGRAVE, JJ., concur.

DOOLIN, J., concurs specially.

IRWIN, V. C. J., and OPALA, J., concur in part, dissent in part.

IRWIN, Vice Chief Justice, concurring in part, dissenting in part.

I am unable to agree with the majority of my associates that "the Legislature intended the sanction of non-recognition against a professional organization to last only for the duration of a strike." I therefore dissent to that portion of the majority opinion which achieves that conclusion.

70 O.S.1978 Supp., § 509.2 provides that: "The local board of education shall recognize a professional organization that secures authorization signed by a majority of the professional educators designating

2. For example, in Minnesota and Maryland, public employee organizations which engage in illegal strikes lose their status as bargaining representative and may not be "recertified" for two years. M.S.A. § 179.64; Md. Educ.Code Ann., §§ 6–410, 6–513. Iowa, I.C.A. § 20.12(5), provides for injunctions against public employee strikes, and if the organization or its officers are held in contempt, the organization is immediately decertified for twelve months. Iowa, Minnesota and Maryland additionally suspend the organization's right to receive dues through "check-off" payroll privileges. In Florida, a public employees' strike may be enjoined and enforced by contempt and a Public Employees Relations Commission may also revoke the responsible organization's certification and impose a fine of up to $20,000 per day of the strike, or, in the alternative, assess the cost of the strike against the organization notwithstanding that the amount may exceed $20,000 per day. Recertification may not occur until one year after final payment of the fine. Fla. Stat.Ann., § 447.507.

said organization as their representative for negotiations. . . . However, all school districts with an average daily attendance of thirty-five thousand (35,000) or more shall adopt the following method for choosing the professional organization."

The method designated for the larger districts requires an election. However, "No election shall be directed by a local board in a bargaining unit within which a valid election was held in the preceding two (2) years."

The majority is concerned, and rightly so, with the possibility that if non-recognition of the organization extends beyond the duration of the strike, the educators might be deprived of the very right the Legislature intended to grant, i.e., the right to be represented by an elected representative in collective bargaining. It appears the concern of the majority is premised to some extent upon the language that "No election shall be directed to be held by a local board in a bargaining unit within which a valid election was held in the preceding two (2) years."

This two year proscription is not applicable to school districts having less than a 35,000 average daily attendance, and in such districts, if the organization shall cease to be recognized, the majority of the educators can immediately designate another organization as its representative. The educators do not lose the right to collective bargaining but the organization that engaged in a strike ceases to be the recognized representative. Prior to the amendment of § 509.2 in 1978, all school districts could immediately designate another organization as its representative if an organization ceased to be recognized.

Although there is a difference in the method for choosing a "professional organization" between school districts with an average daily attendance of 35,000 and those

with less attendance, all professional organizations are subject to the same rights and obligations. When a professional organization is properly elected or authorized, the local board of education shall recognize it. If the organization or its members engage in a strike, said "organization shall cease to be recognized as a representative of the professional or nonprofessional educators and the school district shall be relieved of the duty to negotiate with such organization or its representatives." 70 O.S.1971, § 509.8. This non-recognition proviso is applicable to an organization representing a school district with an average daily attendance of 35,000 and an organization representing a school district with less attendance. Both, if they engage in a strike, cease to be recognized as a representative.

In my opinion, when an organization is elected by the educators in a school district having an average daily attendance of 35,000, and such organization engages in a strike and ceases to be recognized as representative, the two year proscription is not applicable. And, where such organization ceases to be recognized, another organization can be elected to represent the educators. And where such organization is elected, the two (2) year proscription starts again.

I respectfully concur in part and dissent in part.

OPALA, Justice, dissenting in part:

I must recede from the court's decision because its conceptual analysis rests, in a large measure, on the 1978 amendment to our collective bargaining act for professional educators.[1] Inasmuch as that amendment was made applicable solely to school districts "with an average daily attendance of thirty-five thousand (35,000) or more," it is clearly violative of Art. 5, § 46, Okl. Con. The cited provision of our fundamental law *absolutely* and *unequivocally* interdicts the

---

1. Okla. Sess. Laws 1978, c. 221, § 1, 70 O.S. Supp. 1978, § 509.2. All section references in the text are to 70 O.S.

The pertinent part of the amendment in § 509.2 provides:

" * * * However, all school districts with an average daily attendance of thirty-five thousand (35,000) or more shall adopt the following method for choosing the professional organization: * * *"

enactment of "any local or special" law which allows for non-uniform regulation of school district affairs of public school management.[2] The legislature may not deal with any phase or public school administration otherwise than by *law which has general application throughout the state.*[3]

Even if the 1978 addition to § 509.2 did not offend our constitution, I could not accede to the court's interpretation of the mandatory minimum two-year interval between elections embodied in § 509.2C(1) and (6). That provision constitutes *no* impediment to choosing another bargaining agent to replace one who had lost recognition, by operation of § 509.8, because of culpable participation in a strike. The two-year minimum interval was clearly intended to apply as a barrier to more frequent election contests among associations competing for the status *of an official bargaining agent.* It was not meant to deprive educators of a representative when none was legally recognized. The two-year limit cannot hence be invoked to bar an interim election when, as here, professional educators would be left without representation because of a statutorily mandated disaccreditation of their previously certified representative.

Nor can I accede to the court's pronouncement which equates § 509.8 mandated non-recognition of the culpable bargaining agent with mere suspension for a period coextensive with the illegal strike's duration. Had suspension been intended as the only sanction, recognition would not have been used. Recognition imports something far more enduring than temporary suspension.

When the anti-strike provisions of § 509.8 are construed with § 509.2 which governs accreditation of representatives, the only meaning that commends itself to my mind is that whenever recognition must be withdrawn a vacancy was intended to occur.

The vacancy, which arises *ex lege*, is not filled automatically upon cessation of a strike. The statute makes no such accommodation. Nor can the disaccredited agent forthwith capture reinstatement *via* the ballot box. There is no warrant for concluding that the mandating condition of non-recognition may become dissipated in either manner. It is only after the *ex lege* vacancy has been filled and the succeeding agent chosen that the previously disaccredited representative may once again become eligible to compete for the lost position.

DOOLIN, Justice, concurring specially:

I concur with the majority; the trial court was eminently correct in issuing a temporary injunction relieving the Board of a duty to negotiate with OCFT while its members were on strike. I likewise concur with the majority in its conclusion that the "equitable" solution adopted by the trial court was unauthorized and improper.

I feel it necessary to comment specially as to the action of the trial court when it enjoined the District from negotiating with OCFT and from recognizing OCFT as a bargaining agent.

What the Board effected by its declaratory action was two-fold: (1) a declaration that during the strike by OCFT, it was under *no duty to negotiate;* (2)´an injunction against itself that prohibited further negotiation when the strike was over (with the properly certified OCFT). The Board with the trial court's approval, clearly defeated the legislative intent of bargaining, possible arbitration and the whole purpose of the statute—labor management peace.

The injunction against itself was not proper and was a raw example of a misapplication of judicial force—an injunction against striking may have been in order but

---

2. *Wilkinson v. Hale*, 184 Okl. 165, 86 P.2d 305 [1939]; *Union School District # 1 v. Foster Lumber Co.*, 142 Okl. 260, 286 P. 774 [1930]; *Bradford v. Cole*, 95 Okl. 35, 217 P. 470 [1923]; see also *St. Louis-San Francisco Ry. Co. v. Bledsoe*, 7 F.2d 364 [8th Cir. 1925].

3. Although the constitutionality of the 1978 additions to § 509.2 is not raised, we may review this case on a theory not presented by the parties. The exception from strict adversary process is sanctioned for public-law litigation. *Application of Goodwin*, Okl., 597 P.2d 762, 764 [1979].

not one pernicious in nature that destroyed the contract right to bargain collectively and the purpose of the statute.