Dear Executive Director Strader,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Pursuant to 62 O.S. Supp. 2005, § 2310, may some or all ofthe salary and travel expenses of employees of the Board ofDirectors of the Tobacco Settlement Endowment Trust Fund, who aretotally or partially working in support of the programs funded bythe Board, be classified as program expenses and allocated to theprograms budget of the Trust Fund, rather than the operatingbudget?
¶ 1 To answer your question, it is necessary to review the provisions of the Tobacco Settlement Endowment Trust Fund Act ("Act"), 62 O.S. 2001 Supp. 2005, §§ 2301-2310, and related constitutional provisions governing expenses of the Trust.
 I. The Tobacco Settlement Endowment Trust Fund
¶ 2 The Act implements the provisions of Article X, Section 40
of the Oklahoma Constitution, which created the Tobacco Settlement Endowment Trust Fund ("Trust Fund"). 62 O.S. 2001, §2302[62-2302](1). The Trust Fund includes revenues received by the State of Oklahoma from settlements with or judgments against tobacco companies. Okla. Const. art. X, § 40(A). The Constitution created a Board of Investors and a Board of Directors. Okla. Const. art. X, § 40(C), (D). The Act provides the "Board of Directors of the Tobacco Settlement Endowment Trust Fund shall be empowered to appoint an executive director and other staff necessary to perform the duties of the Board of Directors." 62 O.S. 2001, §2309[62-2309](A). The Board is directed to "develop grant programs for private, nonprofit, and public entities for the purposes set forth in Section 40 of Article X of the Oklahoma Constitution."Id. § 2309(C). The Constitution provides that the Board of Directors may expend trust fund earnings on the following programs:
 1. Clinical and basic research and treatment efforts in Oklahoma for the purpose of enhancing efforts to prevent and combat cancer and other tobacco-related diseases;
 2. Cost-effective tobacco prevention and cessation programs;
 3. Programs other than those specified in paragraph 1 of this subsection designed to maintain or improve the health of Oklahomans or to enhance the provision of health care services to Oklahomans, with particular emphasis on such programs for children;
 4. Programs and services for the benefit of the children of Oklahoma, with particular emphasis on common and higher education, before- and after-school and pre-school programs, substance abuse prevention and treatment programs and other programs and services designed to improve the health and quality of life of children;
 5. Programs designed to enhance the health and well-being of senior adults[.]
Okla. Const. art. X, § 40(E).
 II. Constitutional And Statutory Requirements With Respect To Administrative Or Operating Expenses Of The Fund.
¶ 3 Both the Constitution and the Act address the administrative and operating expenses of the Trust Fund. The Constitution provides that the Board of Directors may spend trust fund earnings on specified programs and on the "[a]uthorized administrative expenses of the Office of the State Treasurer and the Board of Directors." Okla. Const. art. X, § 40(E)(6). The Act requires the State Treasurer to provide any necessary staff support to the Board of Investors. 62 O.S. 2001, § 2306[62-2306](G). "The cost of up to two full-time-equivalent employees for the Office of the State Treasurer may be considered as an administrative expense of the trust fund." Id.
¶ 4 The statute implementing the constitutional provision places a cap on "operating expenses," as follows:
 A. The Board of Directors of the Tobacco Settlement Endowment Trust Fund shall adopt a budget for each fiscal year after the Board of Directors has been notified by the Board of Investors of the amount of earnings available for distribution. The budget shall be broken out into an operating budget and a programs budget. The budget shall be presented to the Board of Investors of the Tobacco Settlement Endowment Trust Fund and filed with the Office of State Finance. Operating expenses of the Board of Directors shall not exceed Five Hundred Thousand Dollars ($500,000.00) in any fiscal year. This budget shall include the operating expenses of the State Treasurer approved by the Board of Directors of the Tobacco Settlement Endowment Trust Fund. Operating expenses include salaries, travel, and other operating expenses of the Board of Investors and Board of Directors of the Tobacco Settlement Endowment Trust Fund but do not include expenditures which support the programs funded by the Board of Directors or the professional expenses paid by the Board of Investors related to the management of the Trust Fund. The fees paid to investment managers and the custodian bank must be properly disclosed and approved by the Board of Investors or authorized staff in the Office of the State Treasurer, but the fees may be paid from assets under management. All operating expenses and program expenses shall be paid out against the amount of earnings from the Tobacco Settlement Endowment Trust Fund.
62 O.S. Supp. 2005, § 2310[62-2310](A) (emphasis added).
 III. Analysis
¶ 5 A preliminary issue that needs to be addressed is the difference in terminology in the Constitution and the implementing statutes. In the current version of Section 2310(A), the Legislature uses the term "operating expenses," while the Constitution refers to "administrative expenses." Okla. Const. art. X, § 40(E)(6). Prior to the 2003 amendments (2003 Okla. Sess. Laws ch. 149, § 2(A)), Section 2310(A) also included the term "administrative expenses" rather than "operating expenses," as follows:
 The operating budget of the Board of Directors may not exceed fifteen percent (15%) of the amount of earnings certified by the Board of Investors, provided that the funds spent on administrative expenses shall not exceed Five Hundred Thousand Dollars ($500,000.00) in any fiscal year. This budget shall include the administrative expenses of the State Treasurer approved by the Board of Directors of the Tobacco Settlement Endowment Trust Fund.
62 O.S. 2001, § 2310[62-2310](A) (emphasis added).
 "The purpose of the Tobacco Settlement Endowment Trust Fund Act is to further implement the provisions of Section 40 of Article X of the Oklahoma Constitution. . . ." Id. § 2302. Because the statute and Constitution must be construed together and harmonized, if possible, the term "operating expenses," as used in the statute, must be presumed to have the same meaning as "administrative expenses" as used in the Constitution. See Woodward v. Morrissey, 991 P.2d 1042, 1044 (Okla. 1999) ("It is the duty of the courts, whenever possible, to harmonize the acts of the legislature with the Constitution.").
¶ 6 You ask whether salary and travel expenses of Board employees, who totally or partially work in support of the Trust Fund's programs, may be classified as program expenses rather than operating expenses. The statute requires the budget to be separated into an "operating budget" and a "programs budget" and specifies that "[o]perating expenses include salaries, travel, and other operating expenses of the Board . . . but do not include expenditures which support the programs funded by the Board." 62 O.S. Supp. 2005, § 2310[62-2310](A). The issue is whether "expenditures which support the programs" may properly include the salaries of Board employees who work in support of the programs, or whether the statutory language that includes "salaries" as operating expenses forecloses the Board's discretion to include any of its employees' salaries in the programs budget. The attachment to your official Opinion request indicates you would like to allocate a proportionate part of the salaries and expenses of staff to the programs budget on the basis that "`expenditures which support the programs funded by the Board of Directors' would include all direct expenses as well as an allocable portion of indirect expenses incurred in supporting those programs."[1]
¶ 7 "The fundamental rule of statutory construction is to ascertain and give effect to legislative intent, and that intent is first sought in the language of a statute." In re J.L.M.,109 P.3d 336, 338 (Okla. 2005). If the language is ambiguous, the rules of statutory construction apply. Id. "The test for ambiguity in a statute is whether the statutory language is susceptible to more than one reasonable interpretation." Id.
Section 2310(A) of Title 62 may be interpreted to mean that all salaries and travel expenses of the Board must be treated as "operating expenses" without exception, or it may be interpreted to mean that all salaries and travel expenses must be treated as "operating expenses" except those salary and travel expenses "which support the programs funded by the Board of Directors."Id.
¶ 8 Since all of the duties of the Board involve funding the programs set forth in Section 40 of Article X of the Constitution (see 62 O.S. 2001, § 2309[62-2309](B)), the latter interpretation would allow all salaries of Board employees to be treated as program expenses since all employees work in support of "the programs funded by the Board of Directors." 62 O.S. Supp. 2005,§ 2310[62-2310](A). This interpretation conflicts with the first part of the sentence that provides salaries and travel expenses are to be included as "operating expenses." In ascertaining legislative intent, all "portions of the legislative enactments upon the particular subject, . . . should be construed together and given effect as a whole." Indep. Sch. Dist. No. 89 v. Okla. City Fed'nof Teachers, Local 2309, 612 P.2d 719, 721 (Okla. 1980). "[W]hen parts of an act are reasonably susceptible of a construction which will give effect to both and to the words of each, without violence to either, such construction should be adopted in preference to one which, though reasonable, leads to the conclusion that there is a conflict." Id. at 722.
¶ 9 The Constitution requires the earnings from the Trust Fund to be spent on certain specified programs and on administrative expenses of the Board of Directors and the State Treasurer. Okla. Const. art. X, § 40(E). The Legislature put a cap of $500,000.00 on the operating expenses, including salaries and travel, but specified that operating expenses do not include "expenditures which support the programs." 62 O.S. Supp. 2005, § 2310[62-2310](A). "[E]xpenditures which support the programs" must be interpreted to mean those expenditures that directly fund the programs without including a proportionate part of any operating expenses of the Board, including salaries and travel expenses of Board employees.[2] The public policy expressed in the statute is that the Board limits its operating expenses to $500,000.00. Allocating a portion of the operating expenses, such as certain salaries and travel expenses, to the programs budget would thwart this policy.
¶ 10 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Pursuant to the Tobacco Settlement Endowment Trust Fund Act, 62 O.S. 2001 Supp. 2005, §§ 2301-2310, the salary and travel expenses of employees of the Board of Directors of the Tobacco Settlement Endowment Trust Fund who work in support of the programs funded by the Board of Directors must be classified as operating expenses and included in the operating budget, rather than as program expenses that are included in the programs budget. 62 O.S. Supp. 2005, § 2310(A).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 KATHRYN BASS Assistant Attorney General
[1] Attachment to letter from Tracey Strader, Executive Director, to W.A. Drew Edmondson, Oklahoma Attorney General (Aug. 22, 2005) (on file with the author).
[2] Although an allocation of administrative costs, including salaries and travel, to the programs may be allowable under GAAP (Generally Accepted Accounting Principles), general principles, such as GAAP, do not override the terms of the statute. SeeRichey Manor, Inc. v. Schweiker, 684 F.2d 130, 135 (D.C. Cir. 1982) ("Accounting and legal principles appropriate in other contexts for other purposes have little persuasive force here because the question before us must be decided according to the Medicare regulations and the policies those regulations were designed to implement.").